**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel Ray WALKER, Defendant–Appellant.**

**No. 91–2784.**

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1993.

Decided Nov. 17, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 10, 1994.

---

Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, App. Div., Matthew Craul (argued), Chicago, IL, for plaintiff-appellee.

Richard C. Moenning, Chicago, IL, for defendant-appellant.

Before EASTERBROOK and ROVNER, Circuit Judges, and WILLIAMS, Senior District Judge.*

WILLIAMS, Senior District Judge.

A jury convicted Daniel Ray Walker of multiple counts of mail fraud, 18 U.S.C. § 1341, and unauthorized use of credit cards, 18 U.S.C. § 1029(a)(2). On appeal, Walker argues: (1) that the jury's verdict was logically inconsistent; (2) that the evidence was not sufficient to support the verdict; (3) that statements made by the trial judge regarding stipulations as to the admissibility of evidence denied him a fair trial; (4) that the district court improperly instructed the jury on the elements of mail fraud and burden of proof, thereby denying him a fair trial; and (5) that the trial judge deprived him of a fair trial by denying his counsel's motion to withdraw. For the reasons expressed below, we affirm.

## BACKGROUND

Between January 1988 and September 1990, defendant Daniel Ray Walker defrauded various credit card issuing companies by submitting applications for credit cards in the names of individuals other than himself. Once he received the cards, he used them to obtain goods, services, and cash advances totalling over $36,000.

The scheme apparently began in January 1988 when Walker, posing as Thomas Hamilton, requested and received two official transcripts from the University of Oklahoma. He subsequently used the personal information from these records to apply for the credit cards in the name of Hamilton. He also used the transcript to gain admission to the University of Illinois at Chicago in 1990,

---

* The Honorable Spencer Williams of the United States District Court for the Northern District of California, sitting by designation.

where he was known on campus as Thomas Hamilton.

A grand jury returned an indictment charging Walker with twenty counts of mail fraud and three counts of unauthorized use of credit cards. The twenty mail fraud counts each charged the mailing of a false credit card application to one of the defrauded credit card companies or the mailing of a credit card by the credit card company as a result of the fraudulent application. The last three counts charged Walker with unauthorized use of a number of the credit cards that he obtained through the alleged mail fraud scheme. On the first day of trial, the trial court granted the government's oral motion to dismiss one of the mail fraud counts and one of the unauthorized use of a credit card counts.

Approximately two weeks prior to trial, Walker's attorney moved to withdraw as counsel because Walker refused to meet with her and refused to cooperate with her in preparing his defense. The district court denied this motion after Walker indicated that he did not want to have another attorney appointed for him.

After a three-day trial, the jury convicted Walker on all but one of the mail fraud counts and acquitted him on the remaining count. It also found him guilty on the two remaining counts of the indictment charging unauthorized use of a credit card. On July 3, 1991, the district court sentenced Walker to forty-six months' imprisonment and ordered him to make full restitution. The court issued the judgment and commitment order for that sentence on July 8, 1991, and both were docketed on July 30, 1991. Walker's notice of appeal, filed on July 24, 1991, was timely within the meaning of Fed.R.App.P. 4(b).

## DISCUSSION

### I. Inconsistency in the Verdict

Walker argues the jury's verdict should be set aside because it is inconsistent. According to Walker, the eighteen counts of mail fraud differ only as to the date of the offense. He contends that the evidence offered and mens rea required for each count were the same, and that the government based its case on the theory that Walker engaged in an overall scheme to defraud credit card issuers. Walker claims that it was, therefore, illogical for the jury to acquit him on one count of mail fraud and to convict on the others. According to Walker, this result entitles him to a new trial.

▮ Walker failed to raise this issue below. Consequently, he has waived any objection based on the purported inconsistency in the verdict. *United States v. Angulo,* 864 F.2d 504, 507 (7th Cir.1988). Furthermore, the trial judge committed no plain error by failing *sua sponte* to order a new trial. *See* Fed.R.Crim.P. 52(b).

▮ Even if he had presented this argument to the district court, Walker ignores the well settled rule that an irreconcilable jury verdict does not warrant reversal of a criminal conviction. *United States v. Powell,* 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984); *United States v. Scop,* 940 F.2d 1004, 1007 (7th Cir.1991). Consistency in verdicts is not necessary because each count in an indictment is to be treated as a separate indictment. *Id.* 469 U.S. at 62, 105 S.Ct. at 475 (quoting *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)). In *Powell,* the Supreme Court also reasoned that there is no way to determine whether the government or the defendant has been prejudiced when a jury returns inconsistent verdicts. *Id.* 469 U.S. at 69, 105 S.Ct. at 476. Although it is possible that the government received a windfall, it is "equally possible that the jury, [though] convinced of guilt, ... through mistake, compromise or lenity, arrived at an inconsistent conclusion." *Id.* The Court further noted that defendants are protected against jury irrationality in that they can challenge the sufficiency of the evidence to support the conviction. *Id.* at 67, 105 S.Ct. at 477.

Finally, the count on which Walker was acquitted differs from the other counts as to the name used in the application. This difference alone can explain any alleged inconsistency in the jury's verdict.

Based on the foregoing analysis, we decline to set aside Walker's conviction on the

ground that it was compromised by inconsistent verdicts.

## II. Sufficiency of the Evidence

Walker also argues that the evidence was insufficient to support his conviction on several of the mail fraud counts beyond a reasonable doubt. Specifically, he contends that the evidence was insufficient to prove that he and not someone else was involved in the scheme.

■ When a defendant challenges the sufficiency of the evidence underlying his or her conviction, we will affirm if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). We make this determination by viewing the evidence and the reasonable inferences which can be drawn therefrom in the light most favorable to the government. *Id.*

■ In order to sustain a mail fraud conviction under 18 U.S.C. § 1341, the government must adduce sufficient evidence as to three elements: (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme. *United States v. Cosentino,* 869 F.2d 301, 307–308 (7th Cir.1989), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3220, 106 L.Ed.2d 570 (1989).

■ The government presented ample evidence to support the jury's verdict. As to its theory that Walker assumed the identity of Thomas Hamilton, the government introduced exhibits establishing that official transcripts from Oklahoma State University were requested in the name of Thomas Hamilton and that the bill for the transcripts was mailed to Walker's address. A copy of the transcript was found in his car after he was arrested on state charges in 1988. When Walker was arrested again almost two years later, he was carrying a driver's license and Illinois identification card in the name of Thomas Hamilton, both of which contained his own picture. His roommate at the University of Illinois also testified that Walker was known there as Thomas Hamilton.

There was also abundant evidence to establish that Walker perpetrated the mail fraud scheme. Several witnesses testified that Walker carried credit cards in the name of Thomas Hamilton in his wallet. In addition, the officer who arrested Walker at the University of Illinois testified that during a search of Walker's dormitory room, he recovered a credit card application filled out in Hamilton's name. Evidence was also introduced linking Walker to the addresses where the credit cards were sent. Therefore, we conclude that Walker's conviction on the conspiracy counts was supported by sufficient evidence.

## III. Fairness of Trial Due to Judge's Statements

Walker claims that he was denied a fair trial because the district court judge "pressured" him into stipulating to the admissibility of the fraudulent credit card applications, the dates they were mailed, and the amounts charged on certain credit card accounts. According to Walker, the trial court insisted that he enter the stipulations even though it was the government's burden to prove the essential elements of the counts charged. He also claims that the government failed to obtain the stipulations in writing, in violation of Fed.R.Crim.P. 17.1.

■ Walker failed to object below and, therefore, has waived this argument on appeal. *Angulo,* 864 F.2d at 507. Since he did not preserve this issue, we can reverse only if the district court committed plain error. *United States v. Carroll,* 871 F.2d 689, 692 (7th Cir.1989). "A plain error is one that results in 'an actual miscarriage of justice' (citation omitted) such that the defendant 'probably would have been acquitted but for the erroneously admitted evidence.'" *Id.*

■ Even if Walker had properly preserved the issue for appeal, the record shows that the trial court did not "pressure" him into entering the stipulations. At the pretrial conference, the judge asked defense counsel to *consider* entering into stipulations as to undisputed questions involving the

foundation and authenticity of documentary evidence. 1–24–91 Tr. 4–5. Immediately before the trial began, defense counsel advised the court that her client had instructed her not to stipulate. In response, the judge asked Walker to reconsider his position unless he had a good faith basis for believing that there was something wrong with the documents. *Id.* at 4–6. In doing so, the district court also acknowledged Walker's right to put the government to its proof. *Id.* at 5.

Given that the government intended to call thirty-two witnesses simply to authenticate documents, the judge's request was eminently reasonable. A judge is responsible not only for ensuring a fair trial, but also for making efficient use of judicial resources. The trial judge did not compromise Walker's right to a fair trial by requesting Walker to reconsider his position.

██ Neither can we reverse on the ground that the stipulation violated Fed.R.Crim.P. 17.1. In pertinent part, Fed.R.Crim.P. 17.1 states:

No admissions made by the defendant or the defendant's attorney at the [pretrial] conference shall be used against the defendant unless the admissions are reduced to writing and signed by the defendant and the defendant's attorney.

Walker's stipulation did not concern an admission he made at the pretrial conference. Furthermore, the record below reveals that he signed a handwritten stipulation agreeing, among other things, to the admission of certain government exhibits.

IV. Fairness of Trial Due to Error in Jury Instructions

Walker further argues that the trial court denied him a fair trial by improperly instructing the jury on the elements of mail fraud and the burden of proof. The disputed portion of the jury instruction read as follows: "First, that the defendant knowingly devised a scheme to defraud obtained by means of false pretenses and representations as described in the indictment." Tr. 398. The government concedes that the judge erred and that this section of the instruction should have read: "that the defendant know-

ingly devised the scheme to defraud or obtain money or property by means of false pretenses, representations, or promises, as described in the indictment." *Federal Criminal Jury Instructions,* Seventh Circuit Committee, Volume II at p. 88 (1984).

 Walker failed to preserve this issue for appeal by not raising it below. Although the instruction was unartfully worded, it does not constitute plain error. The instruction accurately advised the jury as to the first element of mail fraud—a defendant's participation in a scheme to defraud. *Cosentino,* 869 F.2d at 308. In addition, the instruction expressly refers to the scheme "described in the indictment." The indictment, which was provided to the jury, charges that Walker "devised and intended to devise a scheme to defraud and to obtain money and property from the Companies by means of false and fraudulent pretenses and representations." Thus, *when read in conjunction with the indictment, the jury instruction clearly informed the jury that the government had to prove beyond a reasonable doubt that Walker devised the scheme charged in the indictment.*

██ Walker also claims that the following jury instruction denied him a fair trial:

The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The government has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the government throughout the case. The defendant is not required to prove his innocence or to produce any evidence.

Tr. 395. Walker argues that this standard Seventh Circuit pattern jury instruction advised the jury that he had produced no evidence. However, he has obviously misconstrued the instruction. It clearly and accurately admonishes the jury that the burden of establishing the defendant's guilt remains on the government throughout the trial.

Shortly before reading this instruction, the trial judge instructed the jury that "a defendant has an absolute right not to testify or offer evidence." Tr. 395. Nowhere in the instructions did the court intimate that Walker had produced no evidence. Accordingly, we refuse to reverse his conviction on this ground.

### V. Defense Counsel's Motion to Withdraw

Walker contends that the district court deprived him of a fair trial by denying defense counsel's motion to withdraw due to "sworn difficulties." "Attorney-client conflicts only justify the grant of a substitution motion when 'counsel and defendant are so at odds as to prevent presentation of an adequate defense.'" *United States v. Morrison,* 946 F.2d 484, 498 (7th Cir.1991) (quoting *United States v. Hillsberg,* 812 F.2d 328, 333 (7th Cir.1987), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987)). In support of his argument, Walker notes that he and his counsel had philosophical differences, that counsel urged him to stipulate to the prosecution's evidence even though he believed in his innocence, and that he heard counsel express a desire to "dump" him on another lawyer. According to Walker, the trial court erred by urging appointed counsel to continue under these circumstances.

 Walker's argument on appeal contradicts the desire he expressed in the district court. The record reveals that Walker was present when the district court considered defense counsel's motion to withdraw. In support of her motion, counsel stated that she and her client had difficulty communicating, but noted that the approaching trial date would make it difficult for another attorney unfamiliar with the case. 2–28–91 Tr. 2–3. The trial judge then asked Walker if he was satisfied with his attorney's services and if he desired another attorney to be appointed. *Id.* at 3. Walker responded that he was only partly satisfied with his attorney's services, but said that he did not want his counsel replaced with another attorney. *Id.* at 3–4.

The trial judge did not urge Walker's attorney to continue but did advise him to cooperate with his counsel, but only after Walker stated that he did not want another attorney. After choosing to retain his attorney, Walker cannot complain now that the court acted unfairly in denying defense counsel's motion to withdraw.

 Although Walker and his attorney may have had a strained relationship, he has made no showing that the difficulties they had prevented her from presenting an adequate defense. Absent such a showing, the trial court's refusal to grant his counsel's motion to withdraw did not violate Walker's Sixth Amendment right to counsel. *Bae v. Peters,* 950 F.2d 469, 477 (7th Cir.1991). Accordingly, we cannot reverse his conviction on this ground.

AFFIRMED.