23 F.3d 411
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Josephine WADE, Defendant-Appellant.
 Nos. 93-1666, 93-2477.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 16, 1994.
Decided April 21, 1994.
Rehearing and Suggestion for Rehearing En Banc
Denied May 19, 1994.
 
 1
 Before EASTERBROOK and MANION, Circuit Judges, and McDADE, District Judge.*
 
 ORDER
 
 2
 Defendant Josephine Wade ("Wade"), who brokered loans in return for a percentage of the amount loaned, was found guilty of one count of causing a wire communication in furtherance of a scheme to defraud and five counts of knowingly transporting funds obtained by fraud in interstate commerce. The court sentenced Wade to five concurrent terms of forty-eight months in prison and ordered her to pay restitution. Wade moved for a new trial, asserting a violation under Brady v. Maryland, 373 U.S. 83 (1963), and claiming that she had "newly discovered evidence;" this motion was denied. Wade appeals her conviction, claiming that the court made various evidentiary errors. Wade also appeals the restitution order and the denial of her motion for new trial. We affirm.
 
 I. Background
 
 3
 Wade began working for Bauman Mortgage Company in 1981 as a loan broker. In that position, she acted as an intermediary between people seeking loans and various financial institutions willing to lend money. She helped the borrowers obtain loans in return for a commission, generally ten percent of the loan amount. Wade's services included helping her clients fill out applications and assemble necessary supporting documentation. But Wade did more than just assemble the supporting documents--she created or assisted in creating fraudulent documentation, including tax returns, employee income statements, and other income-related documents. Using this false documentation, Wade submitted applications containing inflated income amounts. Unaware of the falsified information, the financial institutions approved loans to unqualified borrowers and paid Wade her commission on the fraudulent loans.
 
 
 4
 Two financial institutions which Wade defrauded were First Union Home Equity Corporation ("First Union") and Security Pacific Financial Services, Inc. ("Security Pacific"). Wade allegedly submitted at least nine fraudulent applications to these institutions. The details of only one of the loans, the Stovall loan, is relevant for purposes of this appeal.
 
 
 5
 In late 1986 or early 1987, Wade assisted Sandra Stovall in refinancing her home. The home was worth approximately $250,000 and had an outstanding mortgage of $54,000. Wade submitted an application to First Union seeking a loan of $100,000. The loan application listed Stovall's annual income in excess of $60,000. At the time, however, Stovall was unemployed and on public aid. Wade also directed co-defendant Carolyn Randle, an accountant, to prepare false tax returns, W-2 forms, and other documents supporting this income figure. Based on the false application, First Union loaned Stovall $100,000. Soon thereafter Stovall defaulted on the loan. First Union brought a foreclosure action against Stovall, at which time it learned that Stovall was incompetent. Because of Stovall's incompetency, First Union compromised its claim against her, accepting $78,000 in full payment for Stovall's obligation and paying Stovall the remainder of the foreclosure proceeds (approximately $115,000).
 
 
 6
 Based on the Stovall loan and the other eight fraudulent loans, Wade was indicted for two counts of causing a wire communication in furtherance of a scheme to defraud, in violation of 18 U.S.C. Sec. 1343, and eight counts of knowingly transporting funds obtained by fraud in interstate commerce in violation of 18 U.S.C. Sec. 2314. Wade pleaded not guilty and proceeded to trial.
 
 
 7
 Prior to trial, the government filed a motion in limine seeking to admit 404(b) evidence of a previous 1984 conviction against Wade for bank fraud. The district court granted the government's motion. At trial, the court informed the jury that Wade had been convicted of bank fraud in 1984. The district court simultaneously instructed the jury that the evidence was to be considered "only for the limited purpose of establishing her intent and her knowledge." At the close of the case, the district court again instructed the jury concerning the limited use of this evidence.
 
 
 8
 At trial, the government presented the testimony of Jack Kaphingst from First Union, and Jeffery Irvan and Paul Rossetter from Security Pacific. On cross-examination, Wade asked these defendants questions concerning the lending practices of their financial institutions. The government objected on relevancy grounds. The district court initially allowed the questions and both Paul Rossetter and Jack Kaphingst testified as to their banks' lending procedures. However, when Wade's attorney sought to elicit the same information from Jeffery Irvan the district court sustained the government's relevancy objection, concluding that the lending procedures of the financial institutions were irrelevant as to whether or not Wade committed fraud.
 
 
 9
 After a five-day trial, the jury convicted Wade on six of the ten counts for which she was indicted. The district court sentenced Wade to five concurrent terms of forty-eight months in prison and a consecutive three-year term of probation. The court also ordered Wade to pay restitution in the amounts of $173,337.67 to First Union and $45,921.69 to Security Pacific.
 
 
 10
 On May 4, 1993, Wade filed a motion for a new trial alleging that the prosecution had violated Brady by failing to inform her that First Union had compromised its claim against Stovall and had paid Stovall approximately $115,000 of the foreclosure proceeds. Wade also asserted that this constituted "newly discovered evidence," which entitled her to a new trial. The district court denied this motion.
 
 II. Analysis
 
 11
 On appeal, Wade claims that her conviction should be reversed or, in the alternative, that she should receive a new trial because of two erroneous evidentiary rulings. Specifically, Wade claims that the district court erred in admitting evidence of her 1984 bank fraud conviction and in restricting the scope of her cross-examination of Paul Rossetter, Jack Kaphingst and Jeffery Irvan. In addition, Wade claims that the district court improperly ordered and calculated restitution. Finally, she claims that the district court erred in denying her motion for a new trial either because of a Brady violation or based on "newly discovered evidence."
 
 A. 404(b) Evidence
 
 12
 Wade first argues that the district court erred in admitting evidence under Fed.R.Civ.P. 404(b) of her 1984 bank fraud conviction. This court has established a four-part test for determining admissibility of evidence under Rule 404(b). Evidence may be admitted pursuant to Rule 404(b) if:
 
 
 13
 (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged;
 
 
 14
 (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue;
 
 
 15
 (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and
 
 
 16
 (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.
 
 
 17
 United States v. Briscoe, 896 F.2d 1476, 1499 (7th Cir.1990) (quoting United States v. Zapata, 871 F.2d 616, 620 (7th Cir.1989)).
 
 
 18
 "We give special deference to the evidentiary rulings of the trial judge and overrule such rulings only when we find that the trial judge abused his discretion in admitting testimony. 'Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found.' " United States v. Fulford, 980 F.2d 1110, 1114 (7th Cir.1992) (quoting United States v. Manos, 848 F.2d 1427, 1429 (7th Cir.1988)).
 
 
 19
 Wade claims that the evidence of the 1984 bank fraud did not satisfy the above test. Specifically, Wade claims that the 1984 bank fraud conviction was not "similar enough and close enough in time to be relevant" and that the danger of unfair prejudice outweighed the probative value of the evidence.[1] We do not agree.
 
 
 20
 First, the 1984 conviction for bank fraud was closely related to the charged crime. Both the 1984 conviction and the crime in this case involved Wade submitting false information to lending institutions to induce them to make loans. While the 1984 conviction involved loans that benefitted Wade personally and the crime here involved loans that benefitted others,[2] the district court could have reasonably determined that this distinction was immaterial. Similarly, the crimes were sufficiently close in time. While the bank fraud underlying the 1984 conviction occurred in 1980 and preceded Wade's present fraud by six years, this is still sufficiently close to be relevant. See United States v. DeCastris, 798 F.2d 261, 265 (7th Cir.1986) (ten-year gap was sufficiently close); United States v. Lea, 618 F.2d 426, 431 (7th Cir.1980) (twelve years is sufficiently close).
 
 
 21
 Wade's next assertion, that the prejudicial effect outweighed the probative value, is also unpersuasive. The district court could have reasonably determined this evidence was highly probative of Wade's intent. It demonstrated her familiarity with banking procedures through which loans are obtained. Any prejudicial effect was minimized through the use of limiting instructions both at the time that the evidence was admitted and at the close of evidence. United States v. Robinson, 956 F.2d 1388, 1396 (7th Cir.1992); United States v. Stevenson, 942 F.2d 1111, 1117 (7th Cir.1991). Accordingly, we conclude that the district court did not abuse its discretion in admitting evidence of the 1984 conviction.
 
 B. Cross-Examination
 
 22
 Wade next claims that the district court improperly limited her cross-examination of three government witnesses, Jack Kaphingst from First Union, and Jeffery Irvan and Paul Rossetter from Security Pacific. As a preliminary matter, we note that the district court restricted only Wade's cross-examination of Jeffery Irvan. While the government objected to the cross-examination of Paul Rossetter and Jack Kaphingst, the district court overruled these objections and allowed Wade's attorney to proceed with his cross-examination. We therefore must consider only the propriety of the district court's evidentiary ruling as to Jeffery Irvan.
 
 
 23
 In this case, the district court sustained the government's relevancy objection to the questions Wade's attorney asked Jeffery Irvan concerning the lending practices of Security Pacific. The district court concluded that the lending practices of a defrauded bank were irrelevant because the focus of the mail fraud statute is on the intent of the defendant and not on whether or not a financial institution relied on the fraudulent information. This reasoning complies with our holding in United States v. Biesiadecki, 933 F.2d 539, 544 (7th Cir.1991) (the mail fraud statute does not require the intended victim to actually be defrauded).
 
 
 24
 Wade responds by claiming that her questions concerning the lending practices of the bank did not go to whether the bank relied on the false information but rather to demonstrate that she did not have the intent to defraud because she knew that the banks would not rely on the false information. Even accepting Wade's position (which seems somewhat counterintuitive--why falsify information if the bank will not rely on it?), the district court's assessment of the evidence was reasonable and excluding it was not an abuse of discretion.
 
 C. Restitution
 
 25
 Wade next challenges various aspects of the district court's restitution order. Wade claims that the district court erred in calculating restitution by including consequential damages. Wade also claims that the district court erred in ordering her to pay restitution in excess of her ability to pay. Finally, Wade claims that the district court erred in ordering restitution for three loans, the Stovall, Hamilton and Smylie loans. Wade, however, did not object for any of these reasons at the sentencing hearing. Therefore, we review for plain error only. United States v. Simpson, 8 F.3d 546, 551 (7th Cir.1993).
 
 
 26
 First, Wade claims that the district court erred in calculating restitution by including consequential damages in the award. Wade, however, fails to demonstrate that any consequential damages were actually included in the restitution order. Rather she speculates that this is so because the amount of restitution is relatively large, suggesting "that consequential damages are included." This unsupported speculation is insufficient to demonstrate plain error. Therefore, we affirm the court's calculation of restitution.
 
 
 27
 Wade next argues that the district court erred in ordering full restitution because it failed to consider her inability to pay restitution. A sentencing judge must consider certain factors in ordering restitution, specifically: "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." Simpson, 8 F.3d at 551 (quoting 18 U.S.C. Sec. 3664(a)).
 
 
 28
 While a court must consider these factors in ordering restitution, if the district court orders full restitution it is "not required to make explicit findings of fact regarding the statutory factors." United States v. Arvanitis, 902 F.2d 489, 496 (7th Cir.1990). See, e.g., U.S.S.G. Sec. 5E1.1 Comment ("If the court does not order restitution, or orders only partial restitution, it must state its reasons for doing so."). Rather, the record must only demonstrate "that the court had information about the defendants' and their dependents' financial resources and needs at its disposal." Arvanitis, 902 F.2d at 496. "Once we have determined that the court possessed the necessary information, the next inquiry is whether the district court improperly rejected the potentially mitigating effect of the defendant's or his dependents' financial situation ... the burden falls upon the defendant to demonstrate that because of his particular circumstances, full restitution is unwarranted." Id.
 
 
 29
 In this case, the sentencing judge had information concerning Wade's financial circumstances before it in the Presentence Report. The burden then fell on Wade to demonstrate mitigating circumstances. Wade, however, failed to present any evidence at the sentencing hearing that the restitution award should be mitigated. On appeal, Wade also does not present any mitigating factors, but rather claims that the district court ordered restitution despite its conclusion that Wade would not be able to pay restitution. Wade points to the district court's statement: "Very frankly, I don't know how in the world your going to pay that [restitution], but I am going to expect you to make every effort to dent it somewhat." This statement, however, merely expresses doubt over Wade's ability to pay restitution, and where doubt exists the court should order full restitution. United States v. Ahmad, 2 F.3d 245, 247 (7th Cir.1993). The district court therefore did not commit plain error in ordering full restitution.
 
 
 30
 Finally, Wade challenges the court's order requiring her to pay restitution to Security Financial and First Union for losses stemming from loans made to Stovall, Smylie and Hamilton. Wade claims that restitution to First Union based on the Stovall loan was improper because the loss was not caused by her fraud but by Stovall's incompetence. We disagree. It is true that the bank compromised its claim against Stovall because of her incompetency. First Union, however, only entered into the loan with Stovall because Wade had submitted false tax returns, income statements and leases indicating that Stovall had income in excess of $60,000; Stovall did not qualify for a loan from First Union because she was on public assistance and had no other sources of income. Thus, it was Wade's fraud and not Stovall's incompetency that caused First Union to make the loan and ultimately suffer a loss. Therefore, it was not plain error for the district court to order Wade to pay restitution to First Union based on the Stovall loan.
 
 
 31
 Wade also contends that the district court erred in ordering restitution to Security Pacific for two loans made to Smylie and Hamilton. While Wade was not indicted for separate counts of knowingly transporting funds obtained by fraud in interstate commerce based on the Smylie and Hamilton loans, these loans were part of the scheme to commit mail fraud alleged in counts one and two. A defendant may be required to pay restitution to the victims of a common scheme even if the defendant is not charged independently for fraud on those victims. United States v. Turino, 978 F.2d 315, 318-19 (7th Cir.1992); United States v. Lander, 962 F.2d 592, 600-01 (7th Cir.1992); United States v. Brothers, 955 F.2d 493, 497 (7th Cir.1992); United States v. Bennett, 943 F.2d 738, 740 (7th Cir.1991). Therefore, the district court properly ordered restitution to Security Pacific for the Smylie and Hamilton loans based on Wade's conviction in count two of a scheme to defraud.
 
 
 32
 Wade nevertheless argues that restitution in this situation is improper because the jury convicted her only of the scheme to commit mail fraud alleged in count two, and did not convict her of the allegations in count one. In support of her position, she cites United States v. Kane, 944 F.2d 1406, 1414 (7th Cir.1991), where this court concluded that restitution cannot be ordered on the basis of a scheme if the defendant is acquitted on an independent count involving that victim. In this case, however, Wade was not acquitted on independent charges involving the Smylie and Hamilton loans--Wade was not even charged with separate counts involving these loans. Kane therefore is inapposite. In fact, Count two incorporated the exact same allegations as Count one.
 
 
 33
 What Wade really seeks by this argument is a challenge to the consistency of the jury verdicts. Wade argues in effect, that her acquittal on Count one demonstrates her innocence of the scheme for which she was convicted in Count two. However, as this court has held on numerous occasions, "an irreconcilable jury verdict does not warrant reversal of a criminal conviction [because] each count in an indictment is to be considered as a separate indictment." United States v. Walker, 9 F.3d 1245, 1248 (7th Cir.1993). Because her conviction on Count two is valid, notwithstanding any perceived inconsistency, restitution on the loans underlying the scheme in Count two is also appropriate.
 
 D. Motion for a New Trial
 
 34
 Wade lastly challenges the district court's denial of her motion for a new trial. Wade asserts that she is entitled to a new trial based either on "newly discovered evidence" or based on a Brady violation. Both assertions stem from Wade's position that she did not learn, until after trial, that First Union had compromised its claim against Stovall because of her incompetency, and had paid Stovall over $100,000 in proceeds from the foreclosure sale of her home.
 
 
 35
 It is well-established that a defendant must satisfy a stringent multi-stage test to justify a new trial on the basis of newly discovered evidence. The defendant must demonstrate that the evidence at issue: (1) came to the defendant's knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial.
 
 
 36
 United States v. DePriest, 6 F.3d 1201, 1216-17 (7th Cir.1993) (internal citations omitted). We review the district court's application of this test under an abuse of discretion standard. Id.
 
 
 37
 The district court in this case concluded that the evidence was not "newly discovered" and, even if some of the information was newly discovered, it was immaterial to Wade's guilt. We agree with the district court that the information here is not material for purposes of a motion for new trial.[3] Wade was convicted of defrauding First Union and Security Pacific by submitting false loan applications and false supporting documents. Evidence concerning a compromise between the bank and Stovall based on her incompetency is irrelevant for purposes of determining whether Wade defrauded the bank. Therefore, we conclude that the district court did not abuse its discretion in denying Wade's motion for a new trial based on newly discovered evidence.
 
 
 38
 For the same reason we reject Wade's argument that the government committed a Brady infraction by failing to provide Wade with information concerning the compromise between the bank and Stovall. Suppression of evidence is a violation of a defendant's due process rights only if that evidence is material, Brady v. Maryland, 373 U.S. 83, 87 (1963), and the alleged information here, as we stated above, is not material.
 
 IV. Conclusion
 
 39
 The district court did not err in admitting evidence of a prior bank fraud conviction pursuant to rule 404(b) and it did not err in restricting Wade's cross-examination concerning banking procedures. The district court also did not err in ordering restitution or in denying Wade's motion for a new trial. For these and the foregoing reasons,
 
 
 40
 WE AFFIRM.
 
 
 
 *
 Hon. Joe B. McDade, District Judge for the Central District of Illinois, is sitting by designation
 
 
 [1]
 Wade does not challenge the first and third prongs of the four-prong test
 
 
 [2]
 It is not completely accurate to imply that Wade did not benefit from these loans. She received commissions, as a result of her activities, that would not have been earned absent her fraudulent schemes
 
 
 [3]
 Because we conclude that the information is immaterial, we need not decide whether the information was or could have been discovered before trial