**D. PELFRESNE, Trustee and S. Eisenberg, Trustee, Plaintiffs,**

v.

**The VILLAGE OF ROSEMONT, et al., Defendants.**

No. 96 C 4658.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 24, 1998.

**758**

Tobin Marais Richter, Attorney at Law, Chicago, IL, for D. Pelfresne, S. Eisenberg, plaintiffs.

Peter M. Rosenthal, Simone Marie Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Village of Rosemont, Vito Corriero, August Sansone, defendants.

Robert Montell Stephenson, Matthew F. Kennelly, Terence H. Campbell, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL, Peter M. Rosenthal, Simone Marie Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Donald E. Stephens, Lorraine Clemmensen, John Dorgan, Anthony Esposito, Jack Hasselberger, Emmett Michaels, Bradley Stephens, defendants.

Terry David Weissman, John William Guarisco, Neal, Gerber & Eisenberg, Chicago, IL, for Edward M. Burke, defendant.

James R. Figliulo, Carl A. Gigante, Figliulo & Silverman, Chicago, IL, for Joseph Kusper, Nicholas Peppers, defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

On July 29, 1996, plaintiffs D. Pelfresne ("Pelfresne") and S. Eisenberg ("Eisenberg"), filed a seven-count complaint against defendants, The Village of Rosemont ("Village"), Donald E. Stephens ("D. Stephens"), individually and as the Village President,[1] Lorraine Clemmensen ("Clemmensen"), John Dorgan ("Dorgan"), Anthony Esposito ("Esposito"), Jack Hasselberger ("Hasselberger"), Emmett Michaels ("Michaels"), Bradley Stephens ("B. Stephens"), individually and as members of the Village Board of Trustees ("Board of Trustees"), Vito Corriero ("Corriero"), individually and as the Director of Public Works, and August Sansone ("Sansone"), individually and as the Director of Purchasing and Commercial Leasing. Plaintiffs alleged Sherman Act violations and state law claims for breach of contract and fraud. Defendants moved to dismiss plaintiffs' complaint. On February 3, 1997, the court granted defendants' motion to dismiss on grounds of abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the Anti–Injunction Act, 28 U.S.C. § 2283. The judgment order terminating the case was entered on February 4, 1997, and was docketed February 6, 1997.

Meanwhile, on February 4, 1997, plaintiffs filed a fourteen-count amended complaint pursuant to Fed.R.Civ.P. 15(a), and a "motion for rehearing" of the court's February 3 memorandum opinion and order. Both documents were docketed on February 5. On March 6, 1997, plaintiffs filed a motion for leave to file a second amended complaint. In the amended complaint, plaintiffs named three additional defendants—Terry Reagan ("Reagan"), as an individual and as the Head of Fire Prevention Bureau, Edward M. Burke ("Burke"), as an individual, and Joseph Martinez ("Martinez"), as an individual—and alleged violations of antitrust laws, plaintiffs' civil rights under 42 U.S.C. § 1983, plaintiffs' Fifth and Fourteenth Amendment rights under the United States Constitution, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and Illinois state law. In the second amended complaint, plaintiffs made some minor changes and named two more defendants: Joseph Kusper ("Kusper"), as an individual; and Nicholas Peppers ("Peppers"), as an individual. On July 8, 1997, the court denied plaintiffs' motion for a rehearing and motion to file a second amended complaint. Thereafter, the court gave plaintiffs permission to file an amended RICO complaint.

Plaintiffs have filed a third amended complaint alleging a civil RICO claim against all

---

1. Plaintiffs also allege that D. Stephens is the Mayor of the Village.

of the individual defendants.[2] Defendants[3] move to dismiss the third amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, the court grants defendants' motion, but grants plaintiffs leave to file a fourth amended complaint.

## FACTS[4]

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir.1996). Pelfresne, as trustee, is legal title holder of a tract of land within the Village ("Parcel A"). Eisenberg, as trustee, is legal title holder of a different tract of land within the Village ("Parcel B") on which a masonry restaurant building stands. Although Parcel A is presently devoted to agricultural use, Pelfresne has well-known intentions to develop it for commercial use. Eisenberg owns, leases, and operates restaurants. She and her predecessors in title have regularly leased Parcel B to food service tenants. Both parcels are zoned for commercial use.

Plaintiffs claim that defendants have been trying to acquire what is now plaintiffs' property since 1979. Defendants have attempted to acquire the property by condemning it as "blighted," through eminent domain proceedings, and by raising the real estate taxes to confiscatory levels. On September 24, 1990, however, the Village, by and through Village President D. Stephens, entered into an agreement with plaintiffs' predecessor in title. The agreement provided for the uninterrupted continuation of "DD" Commercial zoning and use and enjoyment of Parcels A and B, including the right to develop, for a term of not less than 15 years.

Plaintiffs claim that defendants have failed to honor this agreement. Parcel B is zoned for restaurants and, according to plaintiffs, does not require a special use permit. Defendants, nevertheless, have denied permits and approvals to Eisenberg's prospective tenants. For example, defendant Corriero, the Director of Public Works for the Village, sent Eisenberg a letter dated May 14, 1996, stating that the Village was refusing to process his permit application for operating an International House of Pancakes restaurant on Parcel B on the grounds that a special use permit was required and that no action could be taken on the project until a hearing was held before the Zoning Board of Appeals. Plaintiffs also allege that defendants sent their predecessor in title a letter dated July 17, 1996, stating that the Village intended to file an eminent domain action to acquire Parcels A and B as public park land and open space. On August 20, 1996, the Village initiated eminent domain proceedings, seeking to acquire plaintiffs' property.[5]

Plaintiffs further allege that defendants' conduct is part of a broader ongoing scheme. According to plaintiffs, defendants acquire property in the Village by wrongfully condemning it as "blighted" or through "sham" eminent domain proceedings or the threat thereof. Defendants then either: (1) use the property for facilities or businesses owned or operated by the Village and award themselves lucrative concessions; or (2) collusively put the property into the hands of a few favored developers who, aided by improper real estate tax exemptions, have the ability to compete unfairly with private businesses. Defendants also use their real estate control and municipal powers to enrich themselves

---

**2.** In the amended and second amended complaints, Reagan was named as an individual and as the Head of Fire Prevention Bureau. Now, in the third amended complaint, Reagan is named as an individual and the Director of Licensing.

**3.** The current motion to dismiss was filed by D. Stephens, Clemmensen, Dorgan, Esposito, Hasselberger, Michaels, B. Stephens, Corriero, Sansone, and Reagan.

**4.** It appears plaintiffs have inadvertently omitted some language from the second amended complaint in paragraphs 26 and 29 of the third amended complaint. Plaintiffs are directed to reinsert this language in the fourth amended complaint, should they choose to file one.

**5.** The eminent domain case is pending in the Circuit Court of Cook County; *Village of Rosemont v. Michael Schiessle as Trustee, Donald Pelfresne, as Trustee, and S. Eisenberg, as Trustee*, Case No. 96 L 50936.

and their own businesses. For example, Sansone, the Director of Purchasing and Commercial Leasing, is given a bargain rent for his hot dog stand and a tax-free parking garage for his patrons. Plaintiffs claim Mayor D. Stephens has sold millions of dollars in real estate to the Village, despite obvious conflicts of interest. To further their scheme, defendants manipulate zoning, wrongfully deny permits, cause harassment by the fire prevention inspector, and evade real estate taxes, in part by filing false affidavits with taxing authorities. Plaintiffs assert that, at present, almost all of the industrial and commercial real estate in the Village has been acquired by condemnation or eminent domain or the threat thereof and is controlled by defendants.

## DISCUSSION

### I. STANDARDS FOR A MOTION TO DISMISS

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *Travel All Over The World, Inc.*, 73 F.3d at 1429 (7th Cir.1996); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432 (7th Cir.1993). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990).

### II. CIVIL RICO

 Plaintiffs claim that defendants have violated 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Thus, to state a claim under § 1962(c), a plaintiff must allege that the defendant, (1) through the commission of two or more acts, (2) constituting a "pattern" (3) of "racketeering activity," (4) conducted or participated in the conduct of (5) an "enterprise," (6) the activities of which affect interstate or foreign commerce. *See, e.g., Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 747 F.2d 384, 387 (7th Cir.1984). To invoke RICO's civil remedies of treble damages and attorneys fees and costs, plaintiff must allege that he has been injured in his business or property. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496–97, 105 S.Ct. 3292, 87 L.Ed.2d 346 (1985).

According to plaintiffs, the Office of the Mayor of Rosemont and the defendants associated with that office constitute a RICO enterprise affecting interstate commerce. The individual defendants participated in the conduct of this enterprise through a pattern of racketeering activity consisting of at least two acts of mail fraud and the manipulation of zoning, wrongful denial of permits, harassment, evasion of real estate taxes, and other activity described above. The two alleged acts of mail fraud are: (1) a letter dated May 14, 1996, that defendant Corriero sent to Eisenberg stating that the Village was refusing to process his permit application; and (2) a letter dated July 17, 1996, that "defendants" sent to plaintiffs' predecessor in title stating that the Village intended to file an eminent domain action to acquire plaintiffs' property.

#### A. The RICO Persons

Plaintiffs allege the RICO defendants or "persons" are the individual defendants in their individual capacities. Plaintiffs specifically state that their RICO claim is not brought against the Village itself. Nevertheless, defendants claim that when plaintiffs' allegations "are read in their entirety, it is clear that the alleged RICO person is the Village of Rosemont, and not the individual defendants." Defendants argue that plaintiffs do not allege that any one individual defendant committed the two acts of mail fraud and, therefore, none of the individual defendants can be found to have engaged in a pattern of racketeering activity by them-

selves. Rather, the individual defendants are merely acting as agents for the Village, which is actually the RICO person. Defendants then argue that plaintiffs' allegations must fail because the Village, a municipal corporation, cannot be held liable as a "person" under RICO.

■■■ As defendants correctly point out, municipal corporations cannot be held liable under § 1964(c). *See, e.g., Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404–05 (9th Cir.1991) (holding civil RICO claims against a public hospital district were properly dismissed because government entities are incapable of forming the malicious intent necessary to support a RICO action and because civil RICO damages are exemplary); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir.1991) (holding civil claim brought under § 1964(c) cannot be maintained against a municipal corporation because its mandatory award of treble damages are punitive). Defendants' argument, however, is irrelevant in the instant case. Although plaintiffs refer to wrongdoing by the Village in the third amended complaint, these references are merely the vestiges of earlier versions of plaintiffs' complaint.[6] In the RICO count itself, plaintiffs clearly state that they are bringing their RICO claim against the individual defendants in their individual capacities, not the Village. The individual defendants are, of course, proper RICO persons. *See* 18 U.S.C. § 1961(3) ("person" defined as "any individual or entity capable of holding a legal or beneficial interest in property"); *Genty*, 937 F.2d at 913 (despite doctrine of municipal immunity, plaintiff may have RICO claim against the municipal officers themselves); *United States v. Emond*, 935 F.2d 1511, 1512 (7th Cir.1991) (affirming conviction of village manager for conducting the affairs of the Village of Streamwood through a pattern of racketeering). Accordingly, the court rejects defendants' argument that plaintiffs have failed to identify a proper RICO person.[7]

### B. The RICO Enterprise

Plaintiffs allege that the RICO enterprise is the "Office of the Mayor of Rosemont and defendants associated therewith." Claiming once again that plaintiffs' allegations are not what they appear, defendants assert "it is clear that the 'enterprise' being alleged is the Village itself." Defendants argue that the enterprise must be the Village because there is no ongoing structure that constitutes the Office of the Mayor. Defendants argue that the Office of the Mayor is not a legal entity; the mayor is merely an official that is part of the ongoing structure of the Village. Building on their argument that the RICO person is the Village, defendants conclude that the Village is insufficient as the alleged RICO enterprise because the RICO person and enterprise are not separate and distinct.[8]

■■■ An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union *or group of individuals associated in fact although not a legal entity.*" 18 U.S.C. § 1961(4) (emphasis added). Thus, an enterprise need not be a legal entity, as defendants suggest; it can be a group of individuals associated in fact. The Office of the Mayor and defendants associated therewith qualifies as an association in fact enterprise. *See, e.g., United States v. Freeman*, 6 F.3d 586, 596–97 (9th Cir.1993) (holding office of state assemblyperson is a proper RICO enterprise); *United States v. Dischner*, 974 F.2d 1502, 1511 (9th Cir.1992) (stating RICO "adequately warned [defendants] that their association with each other and the Office of the Mayor and the Department of Public Works constituted a RICO enterprise"); *United States v.*

---

6. Should plaintiff choose to file a fourth amended complaint, plaintiffs should refer to the individual defendants, rather than the Village, where appropriate. In addition, the Village should be stricken from the caption, and Kusper and Peppers should be added to it.

7. Defendants' argument that plaintiffs have failed to allege that each individual defendant personally committed at least two acts of racketeering

will be addressed below in the context of pleading mail fraud.

8. The court has already rejected defendants' attempt to characterize the Village as the alleged RICO person. Therefore, the court rejects defendants' argument that the RICO enterprise and person are not separate and distinct.

*Lee Stoller Enterprises, Inc.*, 652 F.2d 1313, 1319 (7th Cir.1981) (holding Madison County Sheriff's Office, like other public entities, is a proper RICO enterprise); *see also* G. Robert Blakey & Kevin P. Roddy, *Reflections on Reves v. Ernst & Young: Its Meaning and Impact on Substantive, Accessory, Aiding and Abetting and Conspiracy Liability under RICO*, 33 Am.Crim.L.Rev. 1345, 1479–80 (1996) (collecting cases where governmental offices and organizations, including a state governorship, a state senatorship, and a county judgeship, were held to constitute RICO enterprises).

■ Nevertheless, part of the rationale beneath defendants' argument is persuasive. Plaintiffs claim that D. Stephens abused, and continues to abuse, his position as the Mayor of Rosemont in various ways. Their central grievance, however, is defendants' alleged scheme to acquire property by wrongfully condemning it as "blighted" or through "sham" eminent domain proceedings or the threat thereof. As defendants point out, it is the Village, not the Office of the Mayor, that has the authority to acquire property through eminent domain. Thus, while the Office of the Mayor is a proper enterprise in the abstract, naming the Office of the Mayor as the enterprise in this case is inconsistent with the majority of plaintiffs' allegations. Plaintiffs name one enterprise (the Office of the Mayor), but allege a scheme in which defendants conduct the affairs of another enterprise (the Village). In fact, in their responsive brief, plaintiffs state that the alleged fraudulent letters were sent "by persons associated with the *Village* conducting *its* affairs" (emphasis added). This inconsistency must be remedied by naming the Village as the enterprise or modifying the scheme alleged in a fourth amended complaint, if plaintiffs choose to file one.

### C. A Pattern of Racketeering Activity

■ A pattern of racketeering activity "requires at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). A pattern, however, requires more than just two predicate acts within a

ten-year period. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 236, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). A plaintiff or prosecutor must also show a relationship between the acts and continuity of racketeering activity or the threat thereof. *Id.* at 239–40, 109 S.Ct. 2893. Courts in this circuit consider four factors when determining whether a pattern exists: "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Wade v. Hopper*, 993 F.2d 1246, 1251 (7th Cir.1993).

■ Defendants argue that the two predicate acts of mail fraud alleged—the mailings on May 14, 1996, and July 17, 1996—do not establish a pattern of racketeering because they relate to a single scheme, resulting in a single injury (the acquisition of plaintiffs' property) to the same two victims, and thus do not evidence a continuing threat of criminal conduct. Defendants cite *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474 (7th Cir.1990) to support their position. In *Burnham*, the plaintiffs alleged that they were injured when village officials refused to grant them a building permit and forced them to pay a special assessment. *Id.* at 1478. The Seventh Circuit affirmed summary judgment for the defendants on the plaintiffs' RICO claim because they alleged a single scheme causing injury to a single party, thus failing to establish a pattern. *Id.* at 1478–79.

Defendants' argument is unpersuasive. As is clear from defendants' characterization of the mailings, the two acts are related: at the very least, the letters concern plaintiffs' property and the competing uses for that property proposed by plaintiffs and defendants. In addition, when viewed in the context of the broader scheme alleged, the acts also evidence continuity of racketeering activity or the threat thereof. In *Burnham*, the Seventh Circuit stated that acts relating to an isolated episode of fraud are insufficient to create a pattern without an "allegation that such actions were committed against other persons or that there were other frauds perpetrated against the plain-

tiffs." *Id.* at 1479. Plaintiffs' third amended complaint contains such allegations. Plaintiffs allege that defendants have been attempting to acquire their property wrongfully in various ways since 1979. Moreover, plaintiffs allege that defendants' conduct with respect to their property is merely one example of a broader, long-term, ongoing scheme to acquire property wrongfully in Rosemont and use it to enrich themselves. Accordingly, the court finds that plaintiffs have sufficiently alleged a pattern of racketeering activity.[9]

#### D. Mail Fraud

As stated above, plaintiffs have alleged two predicate acts of mail fraud: (1) the letter dated May 14, 1996, that defendant Corriero sent to Eisenberg stating that the Village was refusing to process his permit application; and (2) the letter dated July 17, 1996, that defendants sent to plaintiffs' predecessor in title stating that the Village intended to file an eminent domain action to acquire plaintiffs' property to use as park land and open space. Defendants argue that plaintiffs have failed to comply with Fed.R.Civ.P. 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Although Rule 9(b) requires that a RICO plaintiff provide only a general outline of the alleged fraud scheme—one sufficient to reasonably notify the defendants of their purported role in the scheme—the complaint, must, at minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'" *Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992) (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir.1991)). In general, Rule 9(b) requires a plaintiff to identify the who, what, when, where, and how of the alleged fraud. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990).

Plaintiffs claim that defendants' refusal in the first letter to process Eisenberg's permit application was not in accordance with the relevant zoning ordinance and constituted a breach of the 1990 settlement agreement which provided for the uninterrupted continuation of "DD" Commercial zoning and use and enjoyment of Parcels A and B. Plaintiffs also claim that the letter was false and sent in furtherance of defendants' scheme to acquire their property. Defendants argue that plaintiffs' allegations regarding the first letter lack sufficient particularity because the settlement agreement is not attached to the complaint and there is nothing to indicate that the letter was in anyway false or fraudulent without it.

Plaintiffs claim that the second letter, dated July 17, 1996, in which defendants stated their intention to file eminent domain proceedings, was also false and sent in furtherance of the defendants' scheme to acquire their property. Plaintiffs state that "the defendants, acting through the Village and its attorney and agent, wrote the letter to plaintiffs' predecessor in title . . . ." Defendants argue that plaintiffs' allegations regarding the second letter lack sufficient particularity because plaintiffs do not specifically identify who wrote the letter and to whom. Defendants also argue that the second letter cannot support a claim of mail fraud because it contains no false statements regarding material facts and induced no reliance.

Defendants misunderstand the nature of mail fraud. The elements of mail fraud are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act [of participation] with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *United States v. Walker,* 9 F.3d 1245, 1249 (7th Cir.1993). Mail fraud does not require the ultimate success of the fraud or the actual defrauding of a victim. *United States v. Richman,* 944 F.2d 323, 332 (7th Cir.1991). As the Seventh Circuit has stated, "[i]t is well established that the crime of mail fraud

---

9. Nevertheless, the court is concerned by plaintiffs' failure to describe more than two recent acts of mail fraud in light of the breadth of the scheme alleged. Allegations concerning the filing false affidavits with taxing authorities, for example, ought to correspond to alleged predicate acts of racketeering. Plaintiffs' failure to provide evidence of the broader scheme alleged may well result in summary judgment for defendants.

does not encompass all the strict requirements of common law fraud." *Richards v. Combined Insurance Co. of Am.,* 55 F.3d 247, 251 (7th Cir.1995). On the contrary, the words "to defraud" in the mail fraud statute are commonly understood to mean " 'wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.' " *Carpenter v. United States,* 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (quoting *McNally v. United States,* 483 U.S. 350, 358, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924))). Accordingly, letters sent in furtherance of a scheme to defraud need not contain any false statements. *Richards,* 55 F.3d at 252; *Murr Plumbing, Inc. v. Scherer Brothers Fin. Serv. Co.,* 48 F.3d 1066, 1069 n. 6 (8th Cir. 1995). In fact, "the use of the mails need not be an essential element of the scheme." *Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). "It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.' " *Id.* at 710–11, 109 S.Ct. 1443 (quoting *Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 60 L.Ed. 706 (1916)).

 Plaintiffs have alleged that defendants cheat people out of their property by falsely condemning it as "blighted" or through "sham" eminent domain proceedings or the threat thereof. These allegations adequately describe a scheme to defraud. *Cf. United States v. Leonard,* 61 F.3d 1181, 1187 (5th Cir.1995) (defining "intent to defraud" as the "contemplat[ion] or intent[ion][of] some harm to the property rights of the victim"); *see* Blakey & Roddy, *supra,* at 1584–1589 app. (discussing meaning of "scheme to defraud"). The court therefore rejects defendants' argument that the letters' lack of false statements violates Rule 9(b).

 Nevertheless, plaintiffs' allegations are problematic in other ways. As defendants point out, plaintiffs have simply "lumped" all of the individual defendants together with respect to the second letter—"an indulgence that a plaintiff should avoid when it comes to attributing acts of mail and wire

fraud...." *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328–29 (7th Cir.1994). "Specificity requirements may be relaxed .... when details are within [a] defendant's exclusive knowledge". *Id.* at 1329. Yet, "defendants are entitled to be apprised of the roles they each played in the alleged scheme...." *Id.* at 1329. More importantly, because liability under § 1962(c) requires the commission of two predicate acts, plaintiffs must attribute at least two predicate acts to each defendant. *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir. 1990); *Goren v. New Vision Int'l, Inc.,* No. 97 C 1771, 1997 WL 548560, at *4 (N.D.Ill. Sept.3, 1997). Plaintiffs have failed to do this.

Plaintiffs must therefore justify their RICO allegations against each defendant in the fourth amended complaint. Plaintiffs may be able to accomplish this, mindful of their obligations under Fed.R.Civ.P. 11, by pleading a conspiracy in violation of § 1962(d), since the acts of one co-conspirator may be attributed to others. *See Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 476–78, 139 L.Ed.2d 352 (1997) (RICO conspirator need not personally commit or agree to personally commit two or more predicate acts); *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.,* 62 F.3d 967, 980 (7th Cir.1995) ("defendant may conspire to violate section 1962(c) if [he] agreed to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity .... [t]he defendant need not have agreed to actually commit the predicate acts [him]self or even to participate in the commission of those acts so long as [he] agreed that the acts would be committed on behalf of the conspiracy") (internal citations and quotations omitted); *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990) ("defendant may be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity, even if that defendant does not directly participate in the underlying acts"). Plaintiffs, however, are cautioned that conclusory allegations will not suffice; rather, they "must allege facts from which one can infer each defendant's agreement to violate § 1962(c)." *Schiffels v. Kemper Fin. Serv., Inc.,* 978 F.2d 344, 352 (7th Cir.1992).

Alternatively, plaintiffs might allege more specifically how each defendant committed mail fraud. *See generally* Blakey & Roddy, *supra,* at 1583–1611 app. (discussing the history, scope, and pleading of mail fraud). A defendant need not personally draft or mail a letter to commit mail fraud; causing the mails to be used is sufficient. *United States v. Alexander,* 135 F.3d 470, 474–75, 1998 WL 35152, at *3 (7th Cir. Jan.30, 1998). At present, however, plaintiffs have failed to plead fraud with sufficient particularity.

### E. Injury

As explained above, plaintiffs must allege that they have been injured in their business or property. *Sedima,* 473 U.S. at 496–97, 105 S.Ct. 3292. Eisenberg alleges that he has lost the rents for the restaurant that would have been operated on Parcel B, but for defendants' conduct. In addition, Eisenberg and Pelfresne both claim that they will lose the fair market value of their respective parcels of property.[10] Defendants argue that plaintiffs' claim that they will lose the fair market value of their property is insufficient because the alleged injury is speculative and not likely to occur. Although the court expresses no opinion as to the likelihood of that turn of events, it agrees that plaintiffs may not rely on injuries that have not yet occurred. Plaintiffs' allegations that they will lose the fair market value of their property in the future are insufficient. In their response, however, plaintiffs argue that defendants' filing of unjustified eminent domain proceedings has produced an immediate and concrete decrease in the value of their property. If these allegations were made in plaintiffs' complaint, rather than in their brief, the court would find them sufficient. Until such allegations are made in the complaint itself, the court is left only with Eisenberg's claim that he lost rents. The court finds that Eisenberg has adequately alleged a concrete injury to his business or property, particularly because the lease was actually signed.[11] Pelfresne, on the other hand, has failed to alleged adequately an injury to his business or property at this time.

### CONCLUSION

Plaintiffs' third amended complaint is dismissed without prejudice. Plaintiffs are given leave to file a fourth and final amended complaint consistent with this opinion, on or before March 17, 1998. In addition, it appears that defendants Kusper and Peppers have not been served. Plaintiffs are directed to serve those defendants on or before the time they file the fourth amended complaint. Defendants shall respond to the fourth amended complaint within 21 days of service thereof. This matter is set for a report on status on April 15, 1998, at 9:00 a.m.

---

**10.** Although plaintiffs do not elaborate on this allegation in their complaint, it is apparent from their response that plaintiffs are claiming that they will not be paid the fair market value of their property if it is acquired by defendants through eminent domain.

**11.** This pertinent fact also appears only in plaintiffs' response. It too should be included in a fourth amended complaint, should plaintiffs choose to file one.