### D. PELFRESNE, Trustee and S. Eisenberg, Plaintiffs,

### v.

### The VILLAGE OF ROSEMONT, an Illinois municipal corporation, Donald E. Stephens, individually and as Village President, Lorraine Clemmesen, John Dorgan, Anthony Esposito, Jack Hasselberger, Emmett Michaels, Bradley Stephens, individually and as members of Village Board of Trustees, Vito Corriero, individually and as Director of Public Works, August Sansone, individually and as Director of Purchasing and Commercial Leasing, Terry Reagan, individually and as Director of Licensing, Edward M. Burke, individually, and Joseph Martinez, individually, Defendants.

No. 96 C 4658.

United States District Court,
N.D. Illinois,
Eastern Division.

July 8, 1997.

Tobin Marais Richter, Chicago, IL, for plaintiffs.

Peter M. Rosenthal, Simone Marie Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Pursuant to Fed.R.Civ.P. 59, plaintiffs, D. Pelfresne and S. Eisenberg, have filed-he instant "Motion for Rehearing" of this court's memorandum opinion and order dated February 3, 1997, granting defendants' motion to dismiss on grounds of abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the Anti–Injunction Act, 28 U.S.C. § 2283. On February 4, 1997, along with the "motion for rehearing," plaintiffs filed March 6, 1997, plaintiffs filed a motion for leave to file a second amended complaint. For the reasons set forth below, plaintiffs' motions are denied.

### DISCUSSION [1]

I. *Filing of First Amended Complaint under Rule 15(a)*

When a court enters judgment in a case, the judgment order is not instantaneously "docketed," i.e. entered on the court's civil docket. For deadline, after the judgment order, the order's docketing date controls. *See* Fed.R.Civ.P. 58 ("A judgment is effective only when entered as provided in Rule 79(a)."); Fed.R.Civ.P. 79(a) (stating that all judgments must be entered in civil docket and explaining procedures for making such entries); *Derrington–Bey v. District of*

---

1. The facts are fully set forth in the court's previous opinion in the instant case, 952 F.Supp. 589

(N.D.Ill.1997).

*Columbia Dept. of Corrections,* 39 F.3d 1224, 1225 (D.C.Cir.1994) ("The 10 days allowed by Rule 59(e) begin with the clerk's ministerial act of entering the court's judgment in a 'book'—today, often an automated system—known as the 'civil docket.'"). As such, there is an unspecified window of time—after a court issues an opinion and order but before the judgment order is docketed—during which parties may be on notice of a judgment order that has not yet become effective. In the instant case, plaintiffs seized on this window of opportunity.

Fed.R.Civ.P. 15(a) states that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Once the court enters judgment upon a dismissal of the case, however, the party may amend the complaint under Rule 15(a) only with leave of court after a motion under Rule 59(e) or 60(b) has been made and the judgment has been set aside or vacated. *Paganis v. Blonstein,* 3 F.3d 1067, 1072–3 (7th Cir.1993).

■ Here, the court entered a memorandum opinion and order on February 3, 1997, granting defendants' motion to dismiss all counts of plaintiffs' complaint. The judgment order terminating the case was entered on February 4, 1997. However, neither the opinion nor the judgment was docketed until February 6, 1997. At that time, defendants had not, nor have they yet, filed a responsive pleading. Meanwhile, on February 4, 1997, plaintiffs filed a "motion for rehearing" and a first amended complaint. Both documents were docketed on February 5.

Plaintiffs argue that the court should consider the first amended complaint in deciding the "motion for rehearing" because both of these documents were filed and docketed before either the court's opinion or judgment order was docketed. Plaintiffs' argument, while highly technical, is correct. Accordingly, the court will address the first amended

complaint in ruling on plaintiffs' "motion for rehearing."

## II. *"Motion for Rehearing"*

■ One day after the court entered its order dismissing all counts of plaintiffs' original complaint, plaintiffs filed the instant "motion for rehearing" pursuant to Fed.R.Civ.P. 59(a). Rule 59(a) allows a party to file a motion for retrial in an action tried with or without a jury. In contrast, Rule 59(e) permits a party to file a motion to alter or amend any judgment within ten days after the entry of the judgment. In the instant case, there was no trial. The court dismissed the action without ruling on the merit.[2] Accordingly, the court treats plaintiffs' "motion for rehearing" as a motion to alter or amend judgment pursuant to Rule 59(e).

Relief from judgment is an "extraordinary remedy reserved for the exceptional case, and the mere desire to expand the allegations of a dismissed complaint does not, by itself, normally merit lifting the judgment." *Camp v. Gregory,* 67 F.3d 1286, 1289 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2498, 135 L.Ed.2d 190 (1996). To succeed on a Rule 59(e) motion, a party usually must present newly discovered evidence or a manifest error of law or fact. *See Russell v. Delco Remy Div. of General Motors,* 51 F.3d 746, 749 (7th Cir.1995).

Plaintiffs' first amended complaint includes fourteen counts[3]: Counts I through V and VI I and IX allege restraint of trade, monopolization, and a pattern of anticompetitive behavior in violation of federal anti-trust laws; Counts X and XI allege violations of plaintiffs' civil rights under 42 U.S.C. § 1983; Count XIII alleges violations of plaintiffs' Fifth and Fourteenth Amendment rights under the United States Constitution; Count XIV alleges violations under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("Civil RICO"); and

---

2. Plaintiffs' original complaint included five counts under federal anti-trust laws and two counts under state law. The court dismissed the federal anti-trust counts based on *Younger* abstention and the Anti–Injunction Act and dismissed the state law claims for lack of pendent jurisdiction.

3. Plaintiffs' first amended, complaint does not include a Count XIII, but includes Counts XIV and XV. Count XIV, "Federal Constitution Violation," is hereinafter Count XIII, and Count XV, "Civil RICO," is hereinafter Count XIV.

Counts VI, VII, and XII allege violations under Illinois law.

Plaintiffs argue that the facts alleged in their first and second amended complaints demonstrate that, over the past seventeen years, defendant Village of Rosemont ("Village") has instituted d "sham" eminent domain proceedings for ostensibly public purposes that are actually for commercial, non-public purposes. Plaintiffs also allege that, on several occasions, the Village unlawfully received tax exemptions on its own commercial property, while imposing excessive real estate taxes on plaintiffs' property. Further, plaintiffs allege that the Village denied them restaurants permits to prevent them from competing with other restaurants owned by the Village and Village officials. Plaintiffs conclude that the condemnation proceeding pending in state court against their property is not an isolated unlawful incident, but part of a much larger pattern of abuse. Consequently, plaintiffs argue, the "sham" exception to *Younger* abstention and the Anti-Injunction Act applies, and the court should vacate its prior ruling.

■ Defendants respond that: (1) plaintiffs could have discovered the facts they assert for the first time in their amended pleadings before they filed their original complaint; and (2) even if the court considers the first and second amended complaints, the "new" factual allegations do not alter the court's prior ruling. The court agrees.

The "sham" exception to the Anti-Injunction Act, 28 U.S.C. § 2283,[4] originates in Justice Blackmun's concurrence in *Vendo Co. v. Lektro–Vend Corporation*, 433 U.S. 623, 629–30, 97 S.Ct. 2881, 2886–87, 53 L.Ed.2d 1009 (1977) In Justice Blackmun's view a federal court may issue an injunction to effectuate antitrust laws; even if state proceedings would be enjoined when "those proceedings are themselves part of a 'pattern of baseless, repetitive claims' that are being used as an anticompetitive device, all the traditional prerequisites for equitable relief are satisfied, and the only way to give the antitrust: Laws their intended scope is by

staying the state proceedings." 433 U.S. at 644, 97 S.Ct. at 2894 (J. Blackmun, concurring) (quoting *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642 (1972)).

However, as plaintiffs acknowledge, Justice Blackmun's opinion was not the Court's opinion and *Vendo* did not have a majority. Moreover, the Seventh Circuit has interpreted Justice Blackmun's exception to § 2283 narrowly. In *Village of Bolingbrook v. Citizens Utilities Co.*, 864 F.2d 481, 483 (7th Cir.1988), Judge Easterbrook explained that Justice Blackmun's opinion in *Vendo* "inquired whether the failure to issue an injunction would prevent the effective enforcement of the antitrust laws. In other words, when does the need to raise antitrust defenses in state court itself impose high costs on rivalrous behavior, discourage competition, raise prices to consumers, arid thereby violate the antitrust laws?" Judge Easterbrook continued: "[i]f the merits of the antitrust, argument are clear there will be swift vindication. ... The need to defend against the state litigation could thwart the achievement of the objectives of the Sherman Act only when the process is the punishment." *Id.* Thus, in that case, he concluded, "[e]ven if the suit pending in state court were 'sham litigation,' § 2283 would prevent an injunction under Justice Blackmun's views because the state court may entertain the antitrust defense without jeopardizing the achievement of federal objectives." *Id.* at 485.

■ The *Younger* doctrine, which prevents a federal court from staying a state civil proceeding where important state interests are involved, rests on similar principles of federalism. As such, it is inapplicable "when the state tribunal is deemed to have prejudged the federal claim because the tribunal has a pecuniary interest in the outcome [or for other reasons]." *W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 490 (7th Cir.1984).

■ Here, plaintiffs' first and second amended complaints, like the original com-

---

4. 28 U.S.C. § 2283 states: A federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

plaint, do not allege in any way that pursuing their claims in state court would be "punishment." Plaintiffs complain that defendants are abusing the state judicial process, but do not allege that Illinois courts are incompetent to hear their federal claims nor that those courts are biased. Rather, because Illinois courts are courts of general jurisdiction, they have concurrent jurisdiction to hear plaintiffs' Section 1983 and federal constitutional claims (Counts X, XI, and XIII). Also, although federal courts may have exclusive jurisdiction of claims under the Sherman Act, Illinois courts are competent to adjudicate antitrust defenses (Counts I through V, VIII, and IX). *See Village of Bolingbrook,* 864 F.2d at 484. Moreover, Illinois law specially allows condemnees in eminent domain proceedings to file a "traverse" or motion to dismiss that challenges the public nature of the condemnation or raises other defenses to that proceeding. *See Village of Cary v. Trout Valley Ass'n,* 282 Ill.App.3d 165, 217 Ill.Dec. 689, 667 N.E.2d 1082 (2d Dist.1996), *appeal denied,* 169 Ill.2d 564, 221 Ill.Dec. 436, 675 N.E.2d 631 (1996); *Medical Center Commission v. Powell,* 124 Ill.App.2d 123, 260 N.E.2d 261 (1st Dist.1970); 735 ILCS 5/2–608. In the instant case, at least one plaintiff has filed a traverse in the pending state case, alleging, among other things, that defendants' eminent domain proceeding unauthorized, unlawful and an abuse of power.

The gravamen of the relief plaintiffs request in their first amended complaint (excluding the civil RICO allegations in Count XIV) is a stay of the eminent, domain proceedings instituted against their own property. While plaintiffs contend that the Village and Village officials have repeatedly abused their eminent domain powers against plaintiffs, a state court has yet to address the merits of plaintiffs' claims. As the Seventh Circuit held in *Ahrensfeld,* at 528 F.2d at 197: "Since plaintiffs may raise the crux of their federal constitutional claims in the pending state proceedings, federal court intervention is unnecessary." *See also Fisichelli v. Town of Methuen,* 764 F.Supp. 2, 3 (D.Mass.1991) ("Federal judicial oversight of

municipal action under the guise of promoting the federal policy against restraint of trade would tend to inhibit a vigorous participation in the political process that lies at the vital center of a robust democracy."). In the interests of equity and federalism, the court abstains from ruling on Counts I through XIII under the *Younger* doctrine and the Anti–Injunction Act. Plaintiffs' "motion for rehearing" on Counts I through XIII of the first amended complaint is denied.

## III. *RICO*

Because plaintiffs' allegations under RICO in Count XIV request monetary damages only, they do not raise the same federalism concerns as the other counts in the first amended complaint.. Nevertheless, Count XIV must be dismissed pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim.

■ The elements common to all civil RICO claims are: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct or control of an enterprise. *See Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989) Plaintiffs allege that the office of the Mayor of Rosemont and the people associated with that office constitute a RICO "enterprise." As predicate acts of the conspiracy, plaintiffs allege: (1) federal antitrust violations stemming from "sham" eminent domain proceedings; (2) mail fraud; (3) unlawful tax exemptions and assessments; and (4) extortion, including Hobbes Act [5] violations. These allegations are insufficient.

■ The antitrust violations alleged against the Village officials,[6] though named in their individual capacities, cannot constitute predicate acts; because they relate to actions taken by the officials in their official capacities. Therefore, as explained in the court's previous opinion, 952 F.Supp. 589, 592 n. 2 (N.D.Ill.1997) the Local Government Anti–Trust Act of 1994, 15 U.S.C. §§ 34–36, precludes plaintiffs from requesting monetary relief from the Village officials.

Moreover, Count XIV fails under Fed. R.Civ.P. 9(b), insofar as it attempts to allege

---

5. 18 *U.S.C.* § 1951.

6. The Village is not named in Count XIV,

fraud. Rule 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." The complaint must state "the identity of the person making the misrepresentation, the time, the place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992).

Although plaintiffs allude to acts of extortion "including Hobbes Act violations," they do not specify to what acts they are referring. Plaintiffs describe acts of the mail fraud simply as those perpetuating "the matters set forth in the Sherman Act counts above." Further, plaintiffs fail to identify the RICO "persons," or explain whether they are separate from those allegedly participating in the RICO enterprise.

Thus, pursuant to Rule 12(b)(6), the court dismisses Count XIV.

### IV. *Motion for Leave to File Second Amendment complaint*

The Seventh Circuit has ruled that a plaintiff should not be given leave to amend a complaint when to do so would be futile. *See, Ross v. City of Waukegan*, 5 F.3d 1084, 1088 (7th Cir.1993) Plaintiffs' second amended complaint adds additional defendants and makes some cosmetic changes from the first amended complaint (i.e. counts are ordered and titled differently). These alterations do not remove the deficiencies in plaintiffs' previous complaints as explained above. Having examined the merits of their request, the court denies plaintiff's motion for leave to file a second amended complaint.[7]

### CONCLUSION

For the reasons set forth above, the court denies plaintiffs' motion for rehearing and motion to file a second amended complaint.

---

[7]. Although a denial of plaintiffs' Rule 59 motion based on plaintiffs' first amended complaint strips this court of jurisdiction, *Paganis*, 3 F.3d at 1073, the Seventh Circuit has explained, *id.* at 1073, n. 7–8: "[W]hen a party files both [a motion to reconsider and a motion for leave to amend], the district court will have to examine the merits of a motion for leave to amend before it can decide whether or not to grant the party's Rule 59(e) or 60(b) motion."