D. PELFRESNE, Trustee and
S. Eisenberg, Trustee,
Plaintiffs,

v.

Donald E. STEPHENS, Individually, and as Village President, Lorraine Clemmensen, John Dorgan, Anthony Esposito, Jack Hasselberger, Emmett Michaels, Bradley Stephens, individually and as members of Village Board of Trustees, Vito Corriero, individually and as Director of Public Works, August Sansone, individually and as Director of Purchasing and Commercial Leasing, Terry Regan, individually and as Director of Licensing, Edward M. Burke, individually, Joseph Martinez, individually, Joseph Kusper, individually, and Nicholas Peppers, individually, Defendants.

No. 96 C 4658.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 27, 1999.

Tobin Marais Richter, Chicago, IL, for plaintiffs.

Peter M. Rosenthal, Simone Marie Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Village of Rosemont, Vito Corriero, August Sansone, Terry Reagan, defendants.

Robert Montell Stephenson, Matthew F. Kennelly, Terence H. Campbell, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL, Peter M. Rosenthal, Simone Marie Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Donald E. Stephens, Lorraine Clemmensen, John Dorgan, Tony Esposito, Jack Hasselberger, Emmett Michaels, Bradley Stephens, defendants.

Terry David Weissman, John William Guarisco, Neal, Gerber & Eisenberg, Chicago, IL, for Edward M. Burke, defendant.

Edward Arthur Berman, Edward A. Berman, P.C., Chicago, IL, for Joseph Martinez, defendant.

James R. Figliulo, Carl A. Gigante, Figliulo & Silverman, Chicago, IL, for Joseph Kusper, Nicholas Peppers, defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

### BACKGROUND

On July 29, 1996, plaintiffs D. Pelfresne ("Pelfresne") and S. Eisenberg ("Eisenberg") filed a seven-count complaint against defendants Donald E. Stephens ("D.Stephens"), individually and as the Village President,[1] Lorraine Clemmensen, John Dorgan, Anthony Esposito, Jack Hasselberger, Emmett Michaels, Bradley Stephens, individually and as members of the Village Board of Trustees,

---

1. Plaintiffs also allege that D. Stephens is the Mayor of the Village.

Vito Corriero, individually and as the Director of Public Works, and August Sansone ("Sansone"), individually and as the Director of Purchasing and Commercial Leasing. Plaintiffs alleged Sherman Act violations and state law claims for breach of contract and fraud. On February 3, 1997, the court granted defendants' motion to dismiss on grounds of abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the Anti–Injunction Act, 28 U.S.C. § 2283. *See Pelfresne v. Village of Rosemont,* 952 F.Supp. 589 (N.D.Ill.1997) *("Pelfresne I ").* The judgment order terminating the case was entered on February 4, 1997, and was docketed February 6, 1997.

On February 4, 1997, plaintiffs filed a fourteen-count amended complaint pursuant to Fed.R.Civ.P. 15(a), and a "motion for rehearing" of the court's February 3 memorandum opinion and order. On March 6, 1997, plaintiffs filed a motion for leave to file a second amended complaint. In the amended complaint, plaintiffs named three additional defendants-Terry Regan ("Regan"), as an individual and as the Head of Fire Prevention Bureau, Edward M. Burke ("Burke"), as an individual, and Joseph Martinez, as an individual-and alleged violations of anti-trust laws, plaintiffs' civil rights under 42 U.S.C. § 1983, plaintiffs' Fifth and Fourteenth Amendment rights under the United States Constitution, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.,* and Illinois state law. In the second amended complaint, plaintiffs made some minor changes and named two more defendants: Joseph Kusper ("Kusper"), as an individual; and Nicholas Peppers ("Peppers"), as an individual. On July 8, 1997, the court denied plaintiffs' motion for a rehearing and motion to file a second amended complaint. *See Pelfresne v. Village of Rosemont,* 174 F.R.D. 72 (N.D.Ill.1997) *("Pelfresne II ").* Thereafter, the court gave plaintiffs permission to file an amended RICO complaint.

On August 15, 1997, plaintiffs filed a third amended complaint alleging a civil RICO claim against all of the individual defendants. Defendants[2] moved to dismiss plaintiffs' complaint. On February 24, 1998, the court granted defendants' motion because plaintiffs had failed to justify their RICO allegations against each defendant. *See Pelfresne v. Village of Rosemont,* 22 F.Supp.2d 756 (N.D.Ill.1998) *("Pelfresne III ").* The court then granted plaintiffs leave to file a fourth amended complaint.

On April 8, 1998, plaintiffs filed a fourth amended complaint in which they replead their civil RICO claim. Count I alleges that all of the defendants except for Vito Corriero and Regan violated 18 U.S.C. § 1962(c); Count II alleges that all of the defendants conspired to violate RICO under 18 U.S.C. § 1962(d). Defendants have filed four separate motions to dismiss the fourth amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). The motions were filed by the following groups of defendants, and will be addressed in the following order: (1) defendants D. Stephens, Lorraine Clemmensen, John Dorgan, Anthony Esposito, Jack Hasselberger, Emmett Michaels, and Bradley Stephens ("Stephens et al."); (2) defendants Sansone, Regan, and Vito Corriero ("Sansone et al."); (3) defendants Kusper and Peppers; and (4) defendant Burke.[3]

## FACTS

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996). Pelfresne, as trustee, is legal title holder of a tract of land within the Village ("Parcel A"). Eisenberg, as trustee, is legal title holder of a different tract of land within the Village ("Parcel B") on which a masonry restaurant building stands. Although Parcel A is presently devoted to agricultural use, Pelfresne has well-known intentions to devel-

2. The motion to dismiss the third amended complaint was filed by D. Stephens, Lorraine Clemmensen, John Dorgan, Anthony Esposito, Jack Hasselberger, Emmett Michaels, Bradley Stephens, Sansone, Regan, and Vito Corriero.

3. Defendant Martinez does not join in any of the motions to dismiss.

op it for commercial use. Eisenberg owns, leases, and operates restaurants. She and her predecessors in title have regularly leased Parcel B to food service tenants. Both parcels are zoned for commercial use.

Plaintiffs claim that defendants have been trying to acquire what is now plaintiffs' property since 1979. Defendants have attempted to acquire the property by condemning it as "blighted," through eminent domain proceedings, and by raising the real estate taxes to confiscatory levels. On September 24, 1990, however, the Village, by and through Village President D. Stephens, entered into an agreement with plaintiffs' predecessor in title. The agreement provided for the uninterrupted continuation of "DD" Commercial zoning and use and enjoyment of Parcels A and B, including the right to develop, for a term of not less than 15 years.

Plaintiffs claim that defendants have failed to honor this agreement. Parcel B is zoned for restaurants and, according to plaintiffs, does not require a special use permit. Defendants, nevertheless, have denied permits and approvals to Eisenberg's prospective tenants. For example, defendant Corriero, the Director of Public Works for the Village, sent Eisenberg a letter dated May 14, 1996, stating that the Village was refusing to process her permit application for operating an International House of Pancakes ("IHOP") restaurant on Parcel B on the grounds that a special use permit was required and that no action could be taken on the project until a hearing was held before the Zoning Board of Appeals. Plaintiffs also allege that defendants sent their predecessor in title a letter dated July 17, 1996, stating that the Village intended to file an eminent domain action to acquire Parcels A and B as public park land and open space. On August 20, 1996, the Village initiated eminent domain proceedings, seeking to acquire plaintiffs' property.[4]

Plaintiffs further allege that defendants' conduct is part of a broader ongoing scheme. According to plaintiffs, defendants acquire property in the Village by wrongfully condemning it as "blighted" or through "sham"

eminent domain proceedings or the threat thereof. Defendants then either: (1) use the property for facilities or businesses owned or operated by the Village and award themselves lucrative concessions; or (2) collusively put the property into the hands of a few favored developers who, aided by improper real estate tax exemptions, have the ability to compete unfairly with private businesses. Defendants also use their real estate control and municipal powers to enrich themselves and their own businesses. For example, Sansone, the Director of Purchasing and Commercial Leasing, is given a bargain rent for his hot dog stand and a tax-free parking garage for his patrons. Plaintiffs claim Mayor D. Stephens has sold millions of dollars in real estate to the Village, despite obvious conflicts of interest. To further their scheme, defendants manipulate zoning, wrongfully deny permits, and cause harassment by the fire prevention inspector.

Plaintiffs allege that defendants Sansone, Kusper, Peppers, and Burke engaged in specific activities in furtherance of the larger scheme to defraud. According to plaintiffs, defendant Sansone executed a fraudulent tax protest in February 1994 in an attempt to raise real estate taxes on plaintiffs' property. Plaintiffs allege that defendants Kusper and Peppers enabled the Village to evade real estate taxes on much of the property it acquires by eminent domain by filing false affidavits with the taxing authorities. Plaintiffs also allege that defendant Burke sought tax records in an attempt to raise taxes on their property. Plaintiffs assert that, at present, almost all of the industrial and commercial real estate in the Village has been acquired by condemnation or eminent domain or the threat thereof and is controlled by defendants.

## DISCUSSION

### I. STANDARDS FOR A MOTION TO DISMISS

In ruling on a motion to dismiss, the court considers "whether relief is possible under

---

4. The eminent domain case is pending in the Circuit Court of Cook County: *Village of Rosemont v. Michael Schiessle as Trustee, Donald* *Pelfresne, as Trustee, and S. Eisenberg, as Trustee,* Case No. 96 L 50936.

any set of facts that could be established consistent with the allegations.". *See Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *See Travel All Over The World, Inc.,* 73 F.3d at 1429 (7th Cir.1996); *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir. 1993). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

## II. CIVIL RICO CLAIMS

### A. Defendants Stephens et al.'s Motion to Dismiss

Stephens et al. move to dismiss the complaint, arguing that: (1) they are shielded by the doctrine of legislative immunity; and (2) plaintiffs fail to plead fraud with the requisite particularity required by Fed.R.Civ.P. 9(b). Stephens et al. also incorporate Sansone et al.'s arguments that plaintiffs' claim is not ripe and that the court should abstain from exercising jurisdiction pursuant to the doctrine of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[5]

### 1. Legislative Immunity

■ The doctrine of legislative immunity does not bar the claims against Stephens et al. Although Stephens et al. are local officials who might otherwise be entitled to legislative immunity, *see Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 970–72, 140 L.Ed.2d 79 (1998) (recognizing legislative immunity for the mayor and aldermen of a town accused of voting on an ordinance that violated petitioner's First Amendment rights), the acts alleged against them are not "legislative functions." Defendants argue

that *Bogan* prohibits courts from examining the purpose or motive behind the alleged acts. It is true that if a defendant is protected by legislative immunity, he is absolutely immune, even if an illegal purpose motivated some of his actions. *See Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *see also Green Street Assoc. v. Daley,* 373 F.2d 1, 6 (7th Cir.1967) ("Given a public purpose or use, the motives that underlie the exercise of [eminent domain] power may not be questioned."). The court, however, must first reach the threshold question of whether Stephens et al. were performing legislative functions to determine whether they were protected by legislative immunity in this situation. To do so, the court must examine the character of the alleged actions.

■ Legislative immunity does not extend to legislators' administrative acts. *See Rateree v. Rockett,* 852 F.2d 946, 950 (7th Cir. 1988).[6] Legislators are entitled to absolute immunity only when they operate in "the sphere of legitimate legislative activity." *See Bogan,* 118 S.Ct. at 972 (addressing decisions implementing budgetary priorities and providing services to constituents). Other activities for which courts grant legislators absolute immunity include: "(1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process." *Biblia Abierta v. Banks,* 129 F.3d 899, 903 (7th Cir.1997).

The actions alleged against Stephens et al. do not fit into any of the above categories. Plaintiffs allege that Stephens et al., as part of a broader RICO conspiracy with the other defendants (who are not legislators), singled

---

**5.** This argument is addressed below in the ruling on Sansone et al.'s motion to dismiss.

**6.** Defendants cite *Bogan* to argue that the proper distinction is not between legislative and administrative acts, but between discretionary and ministerial acts. However, *Bogan* distinguishes between *"legislative* and ministerial duties," 118 S.Ct. at 971 (emphasis added), that is, between acts that occur within the sphere of legitimate

legislative activity and those that do not. This court, like other courts, continues to regard the distinction as one between administrative and legislative acts. *See, e.g., Kamplain v. Curry County Board of Commissioners,* 159 F.3d 1248, 1251 (10th Cir.1998) (a post-*Bogan* case that retains the distinction between legislative and administrative acts).

out plaintiffs and attempted to acquire their land and prevent competition through fraudulent means. Plaintiffs allege that in 1990, they entered into a settlement agreement with Stephens et al. in which plaintiffs agreed (under threat of eminent domain) to transfer to the Village a parcel of their property for road-widening purposes. In exchange, defendants reaffirmed that plaintiffs retained the right to use the property in certain ways through the year 2005, and specified that erecting restaurants was a permissible use of the property. Plaintiffs allege that Stephens et al. never intended to adhere to the settlement agreement, and that they breached the agreement by preventing Eisenberg from placing an IHOP on her property and by attempting to acquire plaintiffs' properties by eminent domain for their personal gain.

Signing the settlement agreement with the concealed intent to breach it, along with the breach itself, constitute administrative acts. These acts are neither core legislative acts nor activities essential to facilitating the legislative process. Unlike the passage of re-zoning ordinances, which the Seventh Circuit has held to be legislative in character even though they affected particular individuals, Stephens et al.'s acts do not create "neutral, prospective rules that apply to all current and future owners of a given property." *Biblia Abierta*, 129 F.3d at 904. To the contrary, according to plaintiffs, Stephens et al. intended that the restrictions the settlement agreement applied to plaintiffs' use of the properties would not apply to Stephens et al. once they gained control of the properties.

Analyzing Stephens et al.'s breach of the settlement agreement through the lens of *Bogan*, this act is analogous to "the hiring and firing of a particular employee," which, unlike "the termination of a position," does not have "prospective implications that reach well beyond the particular occupant of the office," or, in the present case, the particular property owner. *See Bogan*, 118 S.Ct. at 973; *High v. City of Harvey*, 1998 WL 774675, *3 (N.D.Ill. Oct.19, 1998) (applying the *Bogan* rationale to find that local legislators were not entitled to immunity for a

particular act); *see also Heritage Commons Partners v. Village of Summit*, 1987 WL 6598, *5 (N.D.Ill. Feb.12, 1987) (holding that a trustee's vote to reject a single group's specific proposal to develop a single property was an administrative act because "the trustees did not enunciate a prospective rule of general application.").

Although plaintiffs allege that Stephens et al. were engaged in large scale efforts to deprive many property owners in the Village of their properties, the only injury plaintiffs claim is that Stephens et al. wrongfully prevented Eisenberg from building on her property and wrongfully initiated eminent domain proceedings against two parcels of land, plaintiffs' properties, in violation of the settlement agreement. The court finds that signing the agreement with no intent to perform its terms and subsequently breaching the agreement amounted to administrative acts, and therefore denies Stephens et al.'s motion to dismiss on the ground that they are entitled to legislative immunity.

**2. Failure to Plead Fraud With Particularity Under Rule 9(b)**

█ Stephens et al. argue that plaintiffs have failed to allege the underlying frauds with particularity in accordance with Rule 9(b) because they do not identify the other victims with particularity. According to Stephens et al., plaintiffs have therefore failed to allege that defendants engaged in a "pattern" of racketeering activity. To satisfy Rule 9(b), "a RICO plaintiff must allege the time, place, and content of an allegedly fraudulent communication, and the parties to that communication." *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1050 (7th Cir.1998). In order to allege a pattern of racketeering activity, plaintiffs must allege "that such actions were committed against other persons *or* that there were other frauds perpetrated against the plaintiffs." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir.1990) (emphasis added).

█ Plaintiffs have pled with particularity the circumstances of several alleged frauds perpetrated against them. "Predicate acts of racketeering relating to [other victims] may

be pled more generally" if plaintiffs did not have access to information that would identify those victims at the time the complaint was filed. *Corley*, 142 F.3d at 1051. Plaintiffs argue that they do not know the names of other property owners whom defendants have attempted to deprive of their property because such information is currently in defendants' control. As the court noted in *Pelfresne III*, the particularity requirements must be relaxed when facts and details are exclusively in the defendant's control. *See* 22 F.Supp.2d 756, 764 (citing *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328–29 (7th Cir.1994)). Even if plaintiffs do not allege other victims with particularity, the court has already held that plaintiffs have alleged a "pattern" of racketeering activity against Stephens et al. sufficient to survive a motion to dismiss. *See id.* at 762. The court denies Stephens et al.'s motion to dismiss.

### B. Defendants Sansone et al.'s Motion to Dismiss

Defendants Sansone et al. move to dismiss the complaint, arguing that: (1) plaintiffs' claims are not ripe; and (2) the court should abstain from deciding this case under *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Defendant Sansone moves to be dismissed from Count I. Defendant Regan moves to be dismissed from Count II.

### 1. Ripeness

■ Sansone et al.'s arguments that plaintiffs' claims are not ripe rest on the mistaken assumption that plaintiffs are contesting an eminent domain proceeding or challenging a zoning decision in the present suit. In fact, plaintiffs allege that the zoning decision, the eminent domain proceedings brought against them, and other acts are examples of a pattern of racketeering activity that violates RICO.

■ Sansone et al. argue that plaintiffs' claim that their property declined in value

when the Village filed the eminent domain suit is not ripe because the value of plaintiffs' property for purposes of just compensation is determined as of the date the suit was filed. However, plaintiffs have not brought a claim for just compensation in this court; they have brought a RICO claim. Plaintiffs may certainly allege that their property lost market value when defendants initiated allegedly "sham" eminent domain proceedings against them, and that as a result, they were injured by defendants' allegedly fraudulent scheme. The court held as much in its previous decision. *See Pelfresne III*, 22 F.Supp.2d 756, 765 (holding that plaintiffs' allegation that "defendants' filing of unjustified eminent domain proceedings has produced an *immediate and concrete decrease* in the value of their property" was sufficient to allege injury) (emphasis added). Sansone et al. argue that to determine whether the alleged decrease in the fair market value of Pelfresne's property after the suit was filed entitles him to damages, the court would have to find that the Village acted wrongly in filing the eminent domain suit. According to defendants, such a finding is barred by the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, *Younger* merely prevents a federal court from enjoining a state court. *See id.* at 759. Plaintiffs are not asking the court to enjoin the state court; they are simply arguing that they suffered an injury when defendants caused the suit to be brought against them.[7]

Sansone et al. also argue that Eisenberg's claim that she was injured because she lost potential rents when defendants denied her a permit to build an IHOP on her property is not ripe. Sansone et al. argue that Eisenberg does not allege that she applied for and was denied a special use permit for her property. They insist that a plaintiff's claim that she has been injured by a zoning decision is not ripe until she has availed herself of state court remedies. Defendants cite *Williamson County Regional Planning Comm'n v. Ham-*

---

7. Plaintiffs did request such a stay in an earlier incarnation of this case, *see Pelfresne II*, 174 F.R.D. at 77, and the court abstained from exercising jurisdiction under *Younger*. The court explained, however, "Because plaintiffs' allegations

under RICO … request monetary damages only, they do not raise the same federalism concerns as the other counts in the first amended complaint." *Id.* at 77.

*ilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), in support of this argument. The respondents in *Williamson* filed suit alleging a taking in violation of the Fifth Amendment without seeking variances from the Board of Zoning Appeals. The Court held that the suit was not ripe, explaining that their "reluctance to examine taking claims until such a final decision has been made ... is compelled by the very nature of the inquiry required by the Just Compensation Clause." *Id.* at 190, 105 S.Ct. 3108. The present case is easily distinguishable from *Williamson.* Eisenberg is not alleging a taking and is not seeking just compensation. Rather, she alleges that she was the victim of a RICO conspiracy when defendants caused the Village to make an illegal zoning decision, and seeks damages to compensate her for this injury.

Finally, Sansone et al. argue that Eisenberg's claim that she lost rents when she was denied the permit to build the IHOP, and that she thus lost the fair market value of her property, is not ripe because she first must establish in the state court proceeding that the highest and best use of her property is for a restaurant. However, even if Eisenberg receives the fair market value of her property from the state court, plaintiff's allegation that she lost rents is a separate, concrete RICO injury that will not be compensated in the state court proceeding. *See Pelfresne III,* 22 F.Supp.2d 756, 765 ("The court finds that Eisenberg has adequately alleged a concrete injury to [her] business or property, particularly because the lease was actually signed."). The court finds that plaintiffs' claims are ripe.

### 2. *Colorado River* Abstention

■■■ Sansone et al. argue that even if plaintiffs' claims are ripe, the court should abstain from deciding the present suit under the *Colorado River* abstention. The *Colorado River* doctrine applies when "substantially the same parties are contemporaneously litigating substantially the same issues in state and federal court." *LaDuke v. Burlington Northern R. Co.,* 879 F.2d 1556, 1559 (7th Cir.1989). *Colorado River* may not even apply to the present case, because: (1) different

issues are being litigated in each court; and (2) the parties to the state and federal suits are not "substantially the same." As the court emphasized above, plaintiffs' federal case is not an in rem property action; it is a RICO action for money damages. Although the issues in the two cases may overlap, they are not identical. In fact, one of the injuries alleged in the instant case (Eisenberg's claim that she lost rents) is entirely unrelated to the eminent domain proceedings. In addition, the plaintiff in the state eminent domain proceeding is the Village of Rosemont, which is not named as a defendant in the present case. As defendants argued in their motion to dismiss the third amended complaint, and as the court stated in its opinion, the Village cannot be a defendant in the present case because municipal corporations cannot be held liable under § 1964(c). *Pelfresne III,* 22 F.Supp.2d 756, 761.

■■■ Even if *Colorado River* applies to this situation, a brief analysis under the Seventh Circuit's ten factor test demonstrates that the court need not abstain. *See LaDuke,* 879 F.2d at 1559. No single factor is determinative, *see Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236, and several of the relevant factors support the court's decision to retain jurisdiction in the present case. Defendants are correct that the state court has assumed jurisdiction over plaintiffs' property (factor one). However, there is no danger of piecemeal litigation (factor three). Because this court obtained jurisdiction before the state court (factor four), a decision by the state court will not bind the parties in federal court. The Seventh Circuit has held that a state condemnation suit cannot as a matter of law bar a plaintiff's federal action to protect federally created rights if the federal action was brought earlier than the state condemnation suit. *See Progress Dev. Corp. v. Mitchell,* 286 F.2d 222, 232 (7th Cir.1961); *Ahrensfeld v. Stephens,* 528 F.2d 193, 199 n. 9 (7th Cir.1975) (interpreting *Progress* ); *cf. Blankner v. City of Chicago,* 504 F.2d 1037, 1041 (7th Cir.1974) (holding that res judicata and collateral estoppel prevented a plaintiff from litigating issues in federal court that she could have raised in the state condemnation proceeding); *Garry v. Geils,* 874 F.Supp. 195, 200 n. 7 (N.D.Ill.1995) (distinguishing

*Mitchell* because plaintiffs brought their federal action after the state court condemnation suit was initiated).

Moreover, contrary to defendants' argument, the source of governing law in the present case is federal (RICO) (factor five), and therefore the federal forum is not inconvenient (factor two) and plaintiffs' rights will not necessarily be adequately protected by the state court action (factor six). More importantly, taking plaintiffs allegations as true, the only vexatious or contrived claim is the claim before the state court (factor ten). Accordingly, the court declines to abstain under the *Colorado River* doctrine.

### 3. Defendant Sansone's Motion to be Dismissed From Count I

█ Defendant Sansone moves to be dismissed from Count I, arguing that plaintiffs do not allege that he participated in a pattern of racketeering activity. Sansone claims that plaintiffs do not allege that the allegedly fraudulent tax protest constitutes an act of mail fraud because there are no allegations that the mailings contained any false statements, or that plaintiffs relied on these statements to their detriment. Plaintiffs need not show that each letter contained factual misrepresentations or that plaintiff was actually defrauded. *See Pelfresne III*, 22 F.Supp.2d 756, 763 (citing *United States v. Richman*, 944 F.2d 323, 332 (7th Cir.1991)). Plaintiffs' complaint sufficiently alleges that Sansone committed mail fraud. Plaintiffs allege that the tax protest was part of a scheme to defraud them out of their property.[8] In addition, plaintiffs allege two uses of the mails in furtherance of this scheme.[9]

Sansone argues that even if the tax protest amounts to mail fraud, plaintiffs do not allege a pattern of racketeering activity. To allege a pattern, the two predicate acts must be related and continuous. Sansone does not dispute that the various mailings associated

with the tax protest are related. Sansone argues, however, that the mailings do not satisfy the duration requirement of the continuity prong because the acts occurred too close together in time. *See Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 779–80 (7th Cir.1994). Courts have held that there are two types of continuity: closed and open. "Open-ended continuity is present when … 'a specific threat of repetition' exists" by the very nature and scope of the scheme. *Id.* at 782 (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242–43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). "Although a RICO plaintiff must show duration to allege closed-ended continuity, open-ended continuity may satisfy the continuity prong of the pattern requirement regardless of its brevity." *Id.* (citing *H.J.*, 492 U.S. at 241–42, 109 S.Ct. 2893); *see also Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1023 (7th Cir.1992) ("An open-ended period of racketeering … is a course of criminal activity which lacks the duration and repetition to establish continuity."). A plaintiff can show open-ended continuity by alleging that a scheme has no "natural ending point," because such an allegation suggests that the conduct threatens to continue into the future. *See Vicom*, 20 F.3d at 783. Plaintiffs have alleged a scheme that began in 1979 and threatens to continue into the future. Plaintiffs have alleged that Sansone's tax protest caused at least two mailings that furthered this scheme. These mailings satisfy the continuity prong because the scope of the alleged scheme suggests that Sansone may attempt to interfere with plaintiffs' property in the future.

█ Although plaintiffs have alleged that the two mailings constitute a pattern, they cannot allege that they suffered injury as a result of the tax protest, because the Village withdrew the protest. "[A] plaintiff only has

---

8. Although Sansone attempts to argue that the tax protest was a separate scheme, it is part and parcel of the larger scheme, because plaintiffs allege that it was another effort to interfere with plaintiffs' property.

9. The first use of the mails is a letter sent by Peter Rosenthal to Burke's law firm on behalf of the Mayor and the Village that discusses the

withdrawal of the objection Sansone filed with the Cook County Board of Tax Appeals. The second, also a letter from Rosenthal, informs Sansone that his name was used as the taxpayer of record in connection with the objection, and asks Sansone to sign an affidavit consenting to the withdrawal.

standing [under § 1962(c) ] if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also* 18 U.S.C. § 1964(c) (limiting standing to sue under § 1962 to "[a]ny person injured in his business or property by reason of a violation of section 1962"). Plaintiffs need not prove that every act in the pattern caused them a direct injury, but they must show that some injury resulted from the violation. *See Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 810 (7th Cir.1987) ("Once a pattern is proven, ... a plaintiff must show only an injury 'resulting' from the violation. It would be illogical to require a plaintiff to show that all the acts adding up to a 'pattern' injured him, especially in view of the fact that many such acts may be somewhat distinct and separate in time.").

Because the tax protest was withdrawn, plaintiffs are unable to demonstrate that they suffered injury from any of the predicate acts constituting the pattern. Without such a connection, plaintiff cannot show a compensable RICO injury. *See, e.g., Rylewicz v. Beaton Services, Ltd.,* 698 F.Supp. 1391, 1395 (N.D.Ill.1988). The court therefore grants Sansone's motion to be dismissed from Count I.

### 4. Defendant Regan's Motion to Be Dismissed from Count II

Defendant Regan moves to be dismissed from Count II, arguing that plaintiffs cannot claim that he participated in a RICO conspiracy because they do not allege that he agreed to the commission of two predicate acts. To allege conspiracy under § 1962(d), plaintiffs must allege that each defendant, (1) agreed to conduct the enterprise's affairs; (2) agreed to the commission of two specific predicate acts; and (3) knew that the predicate acts were part of a pattern of racketeering activity. *See Schiffels v. Kemper Financial Services, Inc.,* 978 F.2d 344, 352 (7th Cir.1992); *see also Goren v. New Vision Internat'l Inc.,* 156 F.3d 721, 732 (7th Cir.1998). Plaintiffs fail to allege that Regan entered into "an agreement to the

commission of two *specific* predicate acts." *Goren,* 156 F.3d at 733 (emphasis added). The court therefore grants Regan's motion to dismiss and dismisses him from the present case.

### C. Defendants Kusper and Peppers' Motion to Dismiss

Kusper and Peppers' motion to dismiss is granted in part and denied in part. Kusper and Peppers move to be dismissed from Count I on the grounds that: (1) they are not liable under § 1962(c) because they only performed legal services; and (2) plaintiffs do not have standing because they have not alleged that Kusper and Peppers caused any of their injuries. Kusper and Peppers move to be dismissed from Count II on the ground that plaintiffs have not alleged that they participated in an agreement to violate RICO.

### 1. Count I

Kusper and Peppers' status as attorneys does not shield them from § 1962(c) liability. Kusper and Peppers cite the Court's statement in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), that "one is not liable under [§ 1962(c) ] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183, 113 S.Ct. 1163. Defendants are correct that plaintiffs must allege that Kusper and Peppers participated in the operation or management of the enterprise to satisfy the "conduct" requirement of 1962(c). *See Goren,* 156 F.3d at 727. However, the Seventh Circuit has held that "lower-rung participants who are under the direction of upper management may 'operate' a racketeering enterprise." *See MCM Partners, Inc. v. Andrews–Bartlett & Assocs., Inc.,* 62 F.3d 967, 978 (7th Cir.1995); *see also Gio v. United States,* 969 F.Supp. 512, 514 (N.D.Ill.1997) ("[A]lthough Gio was a 'lower-rung' participant, he knowingly implemented the decisions of 'upper management'—such participants are liable under § 1962(c)."). The *MCM* court rested its decision primarily on the fact that the defendants in that case were alleged to be members of the "association in fact" constituting the RICO enter-

prise. *See* 62 F.3d at 979; *Goren,* 156 F.3d at 728 n. 3 ("In reaching [the MCM] decision, we stressed that '[t]he primary fact leading us to this conclusion is the nature of the enterprise [plaintiff] has depicted, as both [defendants] are alleged to be members of an association in fact enterprise constituting the RICO enterprise.'"); *see also Terrell v. Childers,* 920 F.Supp. 854, 864 (N.D.Ill.1996) (holding that defendants not named as part of the association in fact were not liable under § 1962(c)). The court has already held that plaintiffs have alleged that Kusper and Peppers are part of the association in fact. *See Pelfresne III,* 22 F.Supp.2d 756, 761 ("The Office of the Mayor *and defendants associated therewith* qualifies as an association in fact.") (emphasis added).

 Although plaintiffs sufficiently allege that Kusper and Peppers operated the enterprise, they do not allege that their injuries were proximately caused by Kusper and Peppers' actions. All of the injuries plaintiffs alleged in Count I relate to the eminent domain proceedings and to Eisenberg's efforts to erect an IHOP on her property. None of the injuries relate to the alleged fraudulent tax scheme, or to the alleged mailings in furtherance of this scheme. The court grants Kusper and Peppers' motion to dismiss with respect to Count I.

### 2. Count II

Defendants Kusper and Peppers also move to dismiss Count II against them, arguing that plaintiffs allegations that they participated in a RICO conspiracy are merely conclusory.[10] Again, plaintiffs must allege that each defendant: (1) agreed to conduct the enterprise's affairs; (2) agreed to the commission of two specific predicate acts; and (3) knew that the predicate acts were part of a pattern of racketeering activity.

10. The court does not appreciate Kusper and Peppers' use of a gratuitous four-page string cite to support the simple proposition that conclusory allegations of a conspiracy are not sufficient to state a claim under § 1962(d).

11. Plaintiffs allege that Kusper signed a Real Estate Exemption Complaint that was transmitted by mail, and that he thus caused the Cook County Assessor to send him a notification of exemption by mail. Plaintiffs allege that Peppers

 Plaintiffs have alleged the first prong of this test, and the court has held, *supra,* that Kusper and Peppers agreed to conduct the affairs of the enterprise. With respect to the second prong, plaintiffs allege that both Kusper and Peppers caused the commission of two overt acts in furtherance of the agreement to obtain tax exemptions.[11] Defendants argue that one of the two acts alleged against Peppers, perjury, is not a predicate act under RICO. However, the Seventh Circuit interprets RICO broadly for the purposes of § 1962(d), "requiring that a plaintiff only allege an overt act that furthers a RICO conspiracy, even if the overt act is not a predicate act." *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 958 (7th Cir. 1996). Any act in furtherance of the conspiracy to violate RICO constitutes an overt act. *Id.* Therefore, Kusper and Peppers could be liable under § 1962(d) even if the overt acts they committed in furtherance of the agreement to obtain tax exemptions did not amount to predicate acts. In addition, they could be liable as RICO conspirators for merely agreeing to participate in the effort to obtain tax exemptions in furtherance of the larger scheme to defraud. "[W]hile a conspiracy to violate RICO requires an agreement to commit a pattern of predicate acts, it does not require that any predicate acts actually be committed." *Schiffels,* 978 F.2d at 348.

Finally, plaintiffs sufficiently allege the third prong of the *Schiffels* test, knowledge that the acts to which they agreed were part of a pattern of racketeering activity. Viewed in the light most favorable to plaintiffs, Kusper and Peppers' efforts to obtain allegedly fraudulent tax exemptions for the Village demonstrate that they were aware of the enterprise's efforts to compete unfairly with

signed Cook County Assessor's Office affidavits to exempt some of defendants' property from real estate taxes. Plaintiffs allege one instance of mail fraud in connection with these affidavits (according to plaintiffs, the mails were used to transmit information about the exemption application to the State of Illinois), and one instance of perjury (plaintiffs claim that Peppers knew that some of the properties were not properly exempt from real estate taxes).

the plaintiffs and to interfere with plaintiffs' property, and that they intended to participate in these efforts. "RICO conspiracy, like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred from the circumstances." *United States v. Neapolitan*, 791 F.2d 489, 501 (7th Cir.1986). Taking the allegations in the complaint as true, the court can infer that Kusper and Peppers knew that they were participating in the larger scheme to defraud when they helped other defendants obtain fraudulent real estate tax exemptions. The court denies defendants Kusper and Peppers' motion to dismiss with respect to Count II.

### D. Defendant Burke's Motion to Dismiss

■ The court grants defendant Burke's motion to dismiss with respect to Count I but declines to dismiss Burke from Count II. Defendant Burke argues with respect to Count I that plaintiffs fail to allege that the tax protest he filed caused their injuries. Plaintiffs acknowledge that Burke withdrew his objection to the tax assessment. Because the objection did not change the assessed value of the property, plaintiffs cannot allege that the objection injured them in their business or property.

■ Defendant Burke argues that plaintiffs do not state a claim in Count II under § 1962(d) because they fail to allege that Burke agreed to participate in the affairs of an enterprise and that he agreed that someone would commit two predicate acts in furtherance of the enterprise. *See Goren*, 156 F.3d at 732. The court has already held that all of the defendants named in this case are part of "an association in fact enterprise." *Pelfresne III*, 22 F.Supp.2d 756, 761. Plaintiffs allege that Burke orchestrated the tax protest. In support of this allegation, plaintiffs attach two letters from Burke to the Cook County Board of Tax Appeals. In one letter, dated September 17, 1993, Burke requests the tax records for plaintiffs' properties. In the other letter, dated April 25, 1994, Burke requests that the tax protest filed by Sansone be withdrawn. Taking the allegations in the complaint as true, the court can infer that Burke agreed to participate in the larger scheme to defraud by participating

in the filing of the tax protest on behalf of the Village. The court has held that the two mailings from Peter Rosenthal regarding the tax protest, one of which informed Burke's firm that the Village did not want to pursue the tax protest, are predicate acts that constitute a pattern. Plaintiffs sufficiently allege that Burke agreed that at least two overt acts would be committed in furtherance of the enterprise. Although the tax protest was ultimately withdrawn, plaintiffs need not allege that the acts to which Burke agreed actually caused them injury, because plaintiffs need not even allege that such acts were ever committed to state a claim under 1962(d). *See Schiffels*, 978 F.2d at 348. Burke's motion to dismiss Count II is therefore denied.

### CONCLUSION

The court finds that Stephens et al. are not shielded by legislative immunity and denies their motion to dismiss for failure to plead fraud with particularity. Sansone et al.'s motion to dismiss is denied to the extent that the court finds that plaintiffs' claims are ripe, and declines to abstain under *Colorado River*. However, the court grants defendant Sansone's motion to be dismissed from Count I and grants defendant Regan's motion to be dismissed from Count II. Although the court finds that Kusper and Peppers' status as attorneys does not shield them from § 1962 liability, the court grants Kusper and Peppers' motion to be dismissed from Count I because plaintiffs do not allege that their injuries were proximately caused by the fraudulent tax scheme alleged against Kusper and Peppers. The court denies Kusper and Peppers' motion to be dismissed from Count II. Burke's motion to be dismissed from Count I is granted, but his motion to be dismissed from Count II is denied.

Plaintiffs are directed to file a fifth amended complaint conforming to this opinion on or before February 16, 1999. The remaining defendants shall respond thereto on or before March 9, 1999. This matter is set for a report on status on March 10, 1999, at 9:00 a.m.